MUNIZ ET AL. *v.* HOFFMAN, REGIONAL DIREC-
TOR, NATIONAL LABOR RELATIONS BOARD

No. 73–1924.   Argued March 24, 1975—Decided June 25, 1975

*Victor J. Van Bourg* argued the cause for petitioners. With him on the briefs was *Sheldon Otis.*

*Solicitor General Bork* argued the cause for respondent. With him on the brief were *Allan Abbot Tuttle, Peter G. Nash, John S. Irving, Patrick Hardin,* and *Norton J. Come.**

---

*Briefs of *amici curiae* urging reversal were filed by *Frank J. Donner, Winn Newman, Ruth Weyand, Harold I. Cammer, Norman*

Mr. Justice White delivered the opinion of the Court.

The issues in this case are whether a labor union or an individual, when charged with criminal contempt for violating an injunction issued pursuant to § 10 (*l*) of the Labor Management Relations Act, as added, 61 Stat. 149, and as amended, 29 U. S. C. § 160 (*l*), has a right to a jury trial under 18 U. S. C. § 3692, and whether the union has a right to a jury trial under the Constitution when charged with such a violation and a fine of as much as $10,000 is to be imposed.

I

Early in 1970, Local 21 of the San Francisco Typographical Union commenced picketing a publishing plant of a daily newspaper in San Rafael, Cal. Shortly thereafter, the newspaper filed an unfair labor practice charge against this union activity, and the Regional Director of the National Labor Relations Board, in response to that filing, petitioned the District Court pursuant to § 10 (*l*) for a temporary injunction against those activities pending final disposition of the charge by the Board. The District Court, after a hearing, granted the requested relief and, more than two months later, granted a second petition for a temporary injunction filed by the Regional Director in response to other union activities related to

*Leonard,* and *I. Philip Sipser* for the United Electrical, Radio, and Machine Workers of America et al.; by *Joseph A. Yablonski* and *Daniel B. Edelman* for the United Mine Workers of America; by *Nancy Stearns* for the Union Nacional de Trabajadores; and by *Jonathan Shapiro* for the Labor Committee of the National Lawyers Guild.

*Nathan R. Berke* filed a brief for California Newspapers, Inc., dba San Rafael Independent Journal, as *amicus curiae* urging affirmance.

the original dispute. On June 24, 1970, Local 21 and certain of its officials were found to be in civil contempt of the latter injunction. After the entry of this contempt order, the tempo of illegal activities in violation of both injunctions increased, with other locals, including Local 70, participating. Various unions and their officers, including petitioners, were subsequently ordered to show cause why they should not be held in civil and criminal contempt of the injunctions. After proceedings in the criminal contempt case had been severed from the civil contempt proceedings, petitioners demanded a jury trial in the criminal case; this request was denied and petitioners were adjudged guilty of criminal contempt after appropriate proceedings. The District Court suspended the sentencing of petitioner Muniz and placed him on probation for one year; the court imposed a fine on petitioner Local 70 which, for purposes of this case, was $10,000.[1] On appeal of that judgment to the Court of Appeals, petitioners argued, *inter alia,* that they had a statutory right to a jury trial of any disputed issues of fact, relying on 18 U. S. C. § 3692;[2] petitioners also argued that they had a right to a jury trial under Art. III, § 2, of the Constitution, and the Sixth Amendment. The Court of Appeals rejected these and other claims

---

[1] A fine of $25,000 was imposed initially, but $15,000 of that fine was subsequently remitted by the District Court based on Local 70's obedience of the injunctions subsequent to the adjudication of contempt.

[2] Title 18 U. S. C. § 3692 reads in pertinent part as follows:

"In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed."

made by petitioners, 492 F. 2d 929 (CA9 1974), who then petitioned this Court for a writ of certiorari. The writ was granted, 419 U. S. 992 (1974), limited to the questions whether petitioners had a statutory right to a jury trial and whether petitioner Local 70 had a constitutional right to jury trial in this case.

## II

The petitioners' claim to jury trial under § 3692 is simply stated: that section provides for jury trial in contempt cases arising under any federal law governing the issuance of injunctions in *any case* growing out of a labor dispute; here, the injunction issued under § 10 (*l*) arose out of a labor dispute in the most classic sense and hence contempt proceedings were subject to § 3692's requirement for jury trial. Were we to consider only the language of § 3692, we might be hard pressed to disagree. But it is not unusual that exceptions to the applicability of a statute's otherwise all-inclusive language are not contained in the enactment itself but are found in another statute dealing with particular situations to which the first statute might otherwise apply.[3] *Tidewater Oil*

---

[3] Although stating broadly at the outset that "[b]y its own terms [§ 3692] encompasses *all* cases of contempt arising under any of the several *laws* of the United States governing the issuance of injunctions in cases of a 'labor dispute,'" dissenting opinion of MR. JUSTICE STEWART, *post*, at 482, that dissent seems to imply that § 3692, after all, does not reach all cases of contempt in labor dispute injunctions. That dissent appears to say that § 3692 provides the right to jury trials only in cases involving criminal, as opposed to civil, contempt. This is so, it is suggested, because that section guarantees the right to "the accused," the inference being that one charged with civil contempt is not one properly denominated as an "accused." *Post*, at 487–488, n. 7. But the phrase "the accused" was taken verbatim from § 11 of the Norris-LaGuardia Act, 47 Stat. 72, 29 U. S. C. § 111 (1946 ed.), and the legislative history of § 11 leaves little room to doubt that when Congress enacted § 11, it

*Co.* v. *United States,* 409 U. S. 151 (1972); *MacEvoy Co.* v. *United States ex rel. Tomkins Co.,* 322 U. S. 102 (1944). The Norris-LaGuardia Act, 47 Stat. 70, as amended, 29

intended that section to be applicable to both criminal and civil contempt proceedings. That history establishes that § 11 was a compromise between the Senate version of the bill, which provided for a jury trial in all contempt cases, and the House version of the bill, which provided for jury trials in all criminal contempt cases arising under the Norris-LaGuardia Act. The compromise, as explained to the House, gave the right to a jury trial in all contempts, civil or criminal, in cases arising under the Act. 75 Cong. Rec. 6336–6337 (1932). In the Senate, Senator Norris himself explained the compromise as follows:

"As the House passed the bill it did not apply to all contempt cases under the act. As the Senate passed it, it applied to all cases, either under the act or otherwise. As the House passed it, it applied only to criminal contempt. As the Senate passed it, it applied to all contempts. The compromise was to confine it to all cases under the act and to eliminate the word 'criminal,' but the cases must arise under this act." *Id.,* at 6450.

And, Senator Norris continued:

"Under the compromise made, the language of the Senate was agreed to, so that now anyone charged with any kind of a contempt arising under any of the provisions of this act will be entitled to a jury trial in the contempt proceedings." *Id.,* at 6453.

Certainly when Congress used the phrase "the accused" in § 11, it did not mean to limit that phrase to describing only those accused of criminal contempt.

The dissent of MR. JUSTICE STEWART also suggests that this limited reading of § 3692 is "consistent" with the placing of that provision, based on § 11 of Norris-LaGuardia, into Title 18 in 1948. If there is any consistency in this suggestion, it is in that dissent's consistent position that Congress in 1948, without expressing any intention whatsoever to do so, made substantial changes in the right to jury trial—including outright repeal of whatever statutory right there was to jury trial in civil contempt cases arising out of labor disputes, thereby reversing itself on an issue that had been thoroughly considered and decided some 16 years before in Norris-LaGuardia.

In arguing that § 3692 may not reach civil contempt cases, MR. JUSTICE STEWART also relies on implications which he finds in § 10 (*l*)

U. S. C. § 101 *et seq.,* for example, categorically withdraws jurisdiction from the United States courts to issue any injunctions against certain conduct arising out of labor

of the LMRA that § 3692, despite its language, has no application in those cases. As is clear from this opinion, *infra,* at 463–467, we too rely on § 10 (*l*), as well as other provisions, in suggesting that certain contempt cases are not reached by § 3692.

There is also a suggestion in the dissent of MR. JUSTICE STEWART that one charged with contempt of an injunction issued during a national emergency, 29 U. S. C. §§ 176–180, would not have the right to a jury trial notwithstanding § 3692. Apparently this is so because 29 U. S. C. § 178 (b), § 208 of the Taft-Hartley Act, "provided simply and broadly that all the provisions of that [Norris-LaGuardia] Act are inapplicable." *Post,* at 486. But the language Congress used in § 178 (b), "the provisions of sections 101 to 115 of this title, shall not be applicable," is remarkably similar to the language used in the Conference Report of the Taft-Hartley Act to convey the congressional understanding of § 10 (h) of the Wagner Act which it was re-enacting in Taft-Hartley: "making inapplicable the provisions of the Norris-LaGuardia Act in proceedings before the courts . . . ." H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., 57 (1947). See n. 6, *infra.*

MR. JUSTICE STEWART's position with respect to the applicability of § 3692 in proceedings brought in the Court of Appeals to enforce Board orders directed against employers is even less clear, but it would seem to be the inescapable conclusion under the dissent's analysis that, at least in criminal contempts of such orders, the courts of appeals would be required to empanel juries, a result that would certainly represent a novel procedure, see *United States v. Barnett,* 376 U. S. 681, 690–691, and n. 7 (1964).

On the other hand, if MR. JUSTICE STEWART would limit § 3692 to apply only to disobedience of those injunctions newly authorized by the Taft-Hartley Act in 1947, that section, despite its language, would not apply to injunctions issued by the courts of appeals in enforcement actions against employers (it would be otherwise where unions or employees are involved) for the reason that the provisions of the Wagner Act included in the LMRA have the effect of exempting those situations from the reach of § 3692. Very similar reasons furnish sound ground for the inapplicability of § 3692 to contempt cases arising out of *any* of the injunctions authorized by the Taft-Hartley Act.

disputes and permits other injunctions in labor disputes only if certain procedural formalities are satisfied. It contains no exceptions with respect to injunctions in those labor disputes dealt with by the Wagner Act, passed in 1935, or by the Taft-Hartley Act passed in 1947. Yet those Acts expressly or impliedly, *Boys Markets, Inc.* v. *Retail Clerks Union,* 398 U. S. 235 (1970), authorized various kinds of injunctions in labor dispute cases and expressly or impliedly exempted those injunctions from the jurisdictional and procedural limitations of Norris-LaGuardia to the extent necessary to effectuate the provisions of those Acts.

The crucial issue is whether in enacting the Wagner and Taft-Hartley Acts, Congress not only intended to exempt the injunctions they authorized from Norris-LaGuardia's limitations, but also intended that civil and criminal contempt proceedings enforcing those injunctions were not to afford contemnors the right to a jury trial. Surely, if § 10 (*l*) of Taft-Hartley had expressly provided that contempt proceedings arising from the injunctions which the section authorized would not be subject to jury trial requirements, it would be as difficult to argue that § 3692 nevertheless requires a jury trial as it would be to insist that Norris-LaGuardia bars the issuance of any injunctions in the first place. Section 10 (*l*), of course, does not so provide; we think it reasonably clear from that and related sections and from their legislative history that this result is precisely what Congress intended.

The Wagner Act made employers subject to court orders enforcing Board cease-and-desist orders. Those orders, or many of them, were of the kind Norris-LaGuardia, on its face, prohibited; but § 10 (h) of the Wagner Act provided that in "granting appropriate temporary relief or a restraining order, or . . . enforcing . . . or setting aside . . . an order of the Board, . . .

the jurisdiction of courts sitting in equity shall not be limited by" 29 U. S. C. §§ 101–115. In 1947, in passing the Taft-Hartley Act as part of the Labor Management Relations Act, Congress provided for unfair labor practice proceedings against unions; and § 10 (j) gave jurisdiction to the courts to issue injunctions in unfair labor practice proceedings, whether against unions or management, pending final disposition by the Board. Section 10 (*l*) made special provision for interim injunctions "notwithstanding any other provision of law" in particular kinds of unfair labor practice proceedings against unions. Section 10 (h) was retained in its original form.

No party in this case suggests that the injunctions authorized by Congress in 1935 and 1947 were subject to the jurisdictional and procedural limitations of Norris-LaGuardia. Neither can it be seriously argued that, at the time of enactment of the Wagner and Taft-Hartley Acts, civil or criminal contempt charges arising from violations of injunctions authorized by those statutes were to be tried to a jury. The historic rule at the time was that, absent contrary provision by rule or statute, jury trial was not required in the case of either civil or criminal contempt. See *Green* v. *United States,* 356 U. S. 165, 183, 189 (1958). Section 11 of Norris-La-Guardia, 29 U. S. C. § 111 (1946 ed.),[4] required jury trials in contempt actions arising out of labor disputes. But § 11 was among those sections which § 10 (h) expressly provided would not limit the power of federal courts to

---

[4] Section 11 of the Norris-LaGuardia Act, 29 U. S. C. § 111 (1946 ed.), read, in pertinent part, as follows:

"In all cases arising under sections 101–115 of this title in which a person shall be charged with contempt in a court of the United States (as herein defined), the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed."

enforce Board orders. Moreover, § 11 was limited by its own terms and by judicial decision to cases "arising under" the Norris-LaGuardia Act. *United States* v. *Mine Workers,* 330 U. S. 258, 298 (1947). Injunctions issued pursuant to either the Wagner Act or Taft-Hartley Act were not issued "under," but in spite of Norris-LaGuardia; [5] and contempt actions charging violations of those injunctions were not "cases arising under" Norris-LaGuardia. Section 11 of Norris-LaGuardia was thus on its face inapplicable to injunctions authorized by the Wagner and Taft-Hartley Acts; petitioners do not contend otherwise. They say: "From the effective date of Taft-Hartley in late summer, 1947, until June 28, 1948, the effective date of the new § 3692, an alleged contemnor of a Taft-Hartley injunction would probably have been denied the jury trial guaranteed by § 11 of Norris-LaGuardia, because the injunction would not have been one arising under Norris-LaGuardia itself." Brief for Petitioners 41.

It would be difficult to contend otherwise. It seems beyond doubt that since 1935 it had been understood that the injunctions and enforcement orders referred to in § 10 (h) were not subject to the jury requirements of § 11 of Norris-LaGuardia. When Congress subjected labor unions to unfair labor practice proceedings in 1947, and in §§ 10 (j) and 10 (*l*) provided for interim injunctive relief from the courts pending Board decision in unfair labor practice cases, it was equally plain that § 11 by its own terms would not apply to contempt cases arising out of these injunctions. By providing for labor

---

[5] The position of MR. JUSTICE DOUGLAS, dissenting, *post,* at 478–479, that injunctions issued pursuant to the Wagner and Taft-Hartley Acts are or would have been "arising under" the Norris-LaGuardia Act, and therefore subject to § 11 prior to 1948, is contrary to the understanding of the Congresses that passed the Wagner Act, n. 6, *infra,* and the Taft-Hartley Act, *infra,* at 464–467, and of every court to have considered this question, see cases cited n. 12, *infra.*

Act injunctions outside the framework of Norris-LaGuardia, Congress necessarily contemplated that there would be no right to jury trial in contempt cases.

That this was the congressional understanding is revealed by the legislative history of the Labor Management Relations Act.[6] The House Managers' statement in explanation of the House Conference Report on Taft-Hartley stated:

> "Sections 10 (g), (h), and (i) of the present act, concerning the effect upon the Board's orders of enforcement and review proceedings, *making inapplicable the provisions* of the Norris-LaGuardia Act in proceedings before the courts, were unchanged either by the House bill or by the Senate amendment, and are carried into the conference agreement." H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., 57 (1947) (emphasis added).[7]

---

[6] The only legislative history of the Wagner Act addressing this question was the statement of a witness, apparently made in reference to the original version of § 10 (h), § 304 (a) of S. 2926, which was uncontradicted by any prior or subsequent history:

"The whole theory of enforcement of these orders is through contempt proceedings . . . . [T]he order of the labor board is made an order of the Federal court, subject to being punished by contempt. Now, in the Norris-LaGuardia Act, there has been considerable change of the ordinary procedure on contempt. I won't go into detail, but simply state that in a great majority of instances punishment, where the employees are the defendants, must be by trial by jury. This is, of course, not permissible in any case under the Wagner bill." Hearings on S. 2926 before the Senate Committee on Education and Labor, 73d Cong., 2d Sess., 505 (1934).

[7] The dissents suggest that the word "jurisdiction" as used in both § 10 (h) and § 10 (*l*) is to be read in the technical sense and that the reference to all the provisions of Norris-LaGuardia in § 10 (h) was merely "an additional means of identifying" the Norris-LaGuardia Act. *Post*, at 486. Yet the language quoted in the text from the House Managers' statement supports only the position that Congress, in re-enacting § 10 (h) in 1947, understood that section as "making inapplicable the provisions of the Norris-LaGuardia

Such also was the understanding of Senator Ball, unchallenged on this point by his colleagues on the floor of the Senate during the debate on Taft-Hartley. Senator Ball stated:

"[T]he . . . Norris-LaGuardia Act is completely suspended . . . in the current National Labor Relations Act whenever the Board goes into court to obtain an enforcement order for one of its decisions. Organized labor did not object to the suspension of the Norris-LaGuardia Act in that case, I suppose presumably because under the present act the only ones to whom it could apply are employers. Organized labor was perfectly willing to have the Norris-LaGuardia Act completely wiped off the books when it came to enforcing Board orders in labor disputes against employers." 93 Cong. Rec. 4835 (1947).

This statement was made in the context of Senator Ball's explanation of his proposed amendment to § 10 (*l*) as reported out of committee. That section provided generally that the Board would be required, under certain circumstances, to seek injunctive relief in the federal

---

Act," not "making inapplicable the *jurisdictional* provisions of the Norris-LaGuardia Act" as the dissents would have it. Support for the position that § 10 (h) was understood by Congress in 1947 to make inapplicable all the provisions of Norris-LaGuardia comes not only from the House Managers' statement but also from a memorandum introduced into the Congressional Record a decade later by Representative Celler, who concluded that "the clear and unequivocal wording of section 10 (h) . . . clearly indicates a waiver of all the provisions of the Norris-LaGuardia Act, including the provisions for a jury trial, in cases where the Government was a party to the original action." 103 Cong. Rec. 8685 (1957). Representative Celler was the chairman of a House subcommittee which had previously held hearings on the 1948 revision of the Criminal Code including § 3692. The dissents offer nothing from the legislative history that should lead us to reject the clear meaning of the House Managers' statement with respect to the congressional understanding of § 10 (h).

courts against secondary boycotts and jurisdictional strikes "notwithstanding any other provision of law . . . ." Senator Ball's proposed amendment would have had two effects; first, it would have permitted private parties, in addition to the Board, to seek injunctive relief against the identical practices directly in the District Court; and, second, the amendment would have left in effect for such proceedings the provisions of §§ 11 and 12 of the Norris-LaGuardia Act, giving defendants in such proceedings the right to a jury trial. As Senator Ball stated:

> "[W]hen the regional attorney of the NLRB seeks an injunction [pursuant to § 10 (*l*) as reported] the Norris-LaGuardia Act is completely suspended . . . . We do not go quite that far in our amendment. We simply provide that the Norris-LaGuardia Act shall not apply, with certain exceptions. We leave in effect the provisions of sections 11 and 12. Those are the sections which give an individual charged with contempt of court the right to a jury trial." 93 Cong. Rec. 4834 (1947).

The Ball amendment was defeated, and private injunctive actions were not authorized. But the provisions for Board injunctions were retained and the necessity for them explained in the Senate Report:

> "Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that *the Board, acting in the public interest and not*

*in vindication of purely private rights,* may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." S. Rep. No. 105, 80th Cong., 1st Sess., 8 (1947) (emphasis added).

### III

It is argued, however, that whatever the intention of Congress might have been with respect to jury trial in contempt actions arising out of Taft-Hartley injunctions, all this was changed when § 11 was repealed and replaced by 18 U. S. C. § 3692 as part of the 1948 revision of the Criminal Code, in the course of which some sections formerly in Title 18 were revised and some related provisions in other titles were recodified in Title 18. The new § 3692, it is insisted, required jury trials for contempt charges arising out of any injunctive order issued under the Labor Management Relations Act if a labor dispute of any kind was involved. Thenceforward, it is claimed, contempt proceedings for violations by unions or employers of enforcement orders issued by courts of appeals or of injunctions issued under § 10 (j) or § 10 (*l*) must provide the alleged contemnor a jury trial.

This argument is unpersuasive. Not a word was said in connection with recodifying § 11 as § 3692 of the Criminal Code that would suggest any such important change in the settled intention of Congress, when it enacted the Wagner and Taft-Hartley Acts, that there would be no jury trials in contempt proceedings arising out of labor Act injunctions. Injunctions authorized by the Labor Management Relations Act were limited to those sought by the Board, "acting in the public interest and not in vindication of purely private rights." S. Rep.

No. 105, 80th Cong., 1st Sess., 8 (1947). We cannot accept the proposition that Congress, without expressly so providing, intended in § 3692 to change the rules for enforcing injunctions which the Labor Management Relations Act authorized the Labor Board, an agency of the United States, to seek in a United States court. Cf. *United States* v. *Mine Workers*, 330 U. S., at 269- 276.[8]

Just as § 3692 may not be read apart from other relevant provisions of the labor law, that section likewise may not be read isolated from its legislative history and the revision process from which it emerged, all of which place definite limitations on the latitude we have in construing it. The revision of the Criminal Code was, as petitioners suggest, a massive undertaking, but,

---

[8] Petitioners' contention that § 3692 was Congress' response to the Court's decision in *United States* v. *Mine Workers, supra,* is particularly insupportable in light of the fact that the Reviser's Note, as set forth *infra,* at 469, was taken verbatim from the prior Reviser's Note to § 3692 that was reported to the House on February 15, 1945, more than two years prior to this Court's decision in *Mine Workers* and more than three years prior to the 1948 revision of the Criminal Code. The bill reported to the House in 1945, H. R. 2200, was adopted by the House on July 16, 1946, again prior to the decision in *United Mine Workers* and prior to February 5, 1947, when the House Committee on Education and Labor began hearings on labor legislation which eventually led to the introduction of the Taft-Hartley bill in the House on April 10, 1947. The identical version of the Criminal Code passed the House for the final time on May 12, 1947, almost two months prior to the House's acceptance of the conference version of Taft-Hartley.

There could be no argument that the change in wording in § 3692 was intended to reach criminal contempt proceedings for violation of those Board injunctions newly authorized in 1947, for the House of Representatives passed § 3692 for the first time more than six months before hearings even commenced in the House to consider the Taft-Hartley legislation, and passed it for the second and final time, *unchanged,* almost two months before the House accepted the conference version of Taft-Hartley.

as the Senate Report on that legislation made clear, "[t]he original intent of Congress is preserved." S. Rep. No. 1620, 80th Cong., 2d Sess., 1 (1948). Nor is it arguable that there was any intent in the House to work a change in the understood applicability of § 11 in enacting § 3692. The House Report stated that "[r]evision, as distinguished from codification, meant the substitution of plain language for awkward terms, reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions." H. R. Rep. No. 304, 80th Cong., 1st Sess., 2 (1947). Revisions in the law were carefully explained[9] in a series of Reviser's Notes printed in the House Report. *Id.,* at A1 *et seq.* But the Reviser's Note to § 3692 indicates no change of substance in the law:

> "Based on section 111 of title 29, U. S. C., 1940 ed., Labor (Mar. 23, 1932, ch. 90, § 11, 47 Stat. 72).
>
> "The phrase 'or the District of Columbia arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute' was inserted and the reference to specific sections of the Norris-LaGuardia Act (sections 101–115 of title 29, U. S. C., 1940 ed.) were eliminated." H. R. Rep. No. 304, *supra,* at A176; 18 U. S. C., pp. 4442–4443.

It has long been a "familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Holy Trinity Church* v. *United States,* 143 U. S. 457, 459 (1892). Whatever may be said with regard to the application of this rule in other

---

[9] The House Report states that "[t]he reviser's notes . . . explain in detail every change made in text." H. R. Rep. No. 304, 80th Cong., 1st Sess., 9 (1947).

contexts, this Court has stated unequivocally that the principle embedded in the rule "has particular application in the construction of labor legislation . . . ." *National Woodwork Mfrs. Assn.* v. *NLRB*, 386 U. S. 612, 619 (1967). Moreover, we are construing a statute of Congress which, like its predecessor, created an exception to the historic rule that there was no right to a jury trial in contempt proceedings. To read a substantial change in accepted practice into a revision of the Criminal Code without any support in the legislative history of that revision is insupportable. As this Court said in *United States* v. *Ryder*, 110 U. S. 729, 740 (1884): "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such an intention be clearly expressed."

The general rule announced in *Ryder* was applied by this Court in *Fourco Glass Co.* v. *Transmirra Corp.*, 353 U. S. 222 (1957). In that case, the question was whether venue in patent infringement actions was to be governed by 28 U. S. C. § 1400 (b), a discrete provision dealing with venue in patent infringement actions, or 28 U. S. C. § 1391 (c), a general provision dealing with venue in actions brought against corporations. Both of these provisions underwent some change in wording in the 1948 revision of the Judicial Code.[10] The respondents in that

---

[10] The Court's analysis in *Fourco Glass Co.* v. *Transmirra Corp.*, 353 U. S. 222 (1957), is particularly relevant to our inquiry in this case because of the parallel courses followed by the revisions of the Criminal and Judicial Codes. The revision to the Criminal Code was prepared by a staff of experts drawn from various sources and, after this staff completed its work on that revision, the same staff turned its attention to the revision of the Judicial Code. The only hearings held in the House on either of the revisions were held jointly by a subcommittee of the House Committee on the Judiciary. Hearings on Revision of Titles 18 and 28 of the United States Code, before Subcommittee No. 1 of the House Committee on the

case, arguing in favor of the applicability of the general venue provision, § 1391 (c), took the position that the plain language of § 1391 (c) was "clear and unambiguous and that its terms include all actions . . . ." 353 U. S., at 228. This Court, stating that the respondents' argument "merely points up the question and does nothing to answer it," *ibid.*, determined that the general provision, § 1391 (c), had to be read in a fashion consistent with the more particular provision, § 1400 (b). The respondents contended, however, that the predecessor of § 1400 (b), which this Court had held to govern venue irrespective of a general revenue provision, *Stonite Products Co.* v. *Melvin Lloyd Co.*, 315 U. S. 561 (1942), had undergone a substantive change during the revision of the Judicial Code in 1948 which effectively reversed the result dictated by *Stonite*.

The Court rejected this argument in terms acutely

---

Judiciary, 80th Cong., 1st Sess. (1947). The House Reports issued subsequent to those hearings parallel one another in many respects, including almost identical statements respecting the purpose and scope of the two revisions. Compare H. R. Rep. No. 304, 80th Cong., 1st Sess., 2 (1947), quoted in the text, *supra*, at 469, with H. R. Rep. No. 308, 80th Cong., 1st Sess., 2 (1947):

"Revision, as distinguished from codification, required the substitution of plain language for awkward terms, reconciliation of conflicting laws, repeal of superseded sections, and consolidation of related provisions."

The Senate Reports on the two revisions likewise expressed the intention of preserving the original meaning of the statutes undergoing revision. Compare S. Rep. No. 1620, 80th Cong., 2d Sess., 1 (1948), quoted in the text, *supra*, at 469, with S. Rep. No. 1559, 80th Cong., 2d Sess., 2 (1948) ("great care has been exercised to make no changes in the existing law which would not meet with substantially unanimous approval"). Testimony in the House joint hearings confirms that the methods and intent of the revisers themselves were the same with respect to both revisions. Hearings, *supra*, at 6.

relevant to this case. "[N]o changes of law or policy," the Court said, "are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed." 353 U. S., at 227. Furthermore, a change in the language of a statute itself was not enough to establish an intent to effect a substantive change, for "every change made in the text is explained in detail in the Revisers' Notes," *id.*, at 226, and the Notes failed to express any substantive change. The Court relied on the Senate and House Reports on the 1948 revision to support this position, *id.*, at, 226 nn. 6 and 7; the language quoted by the Court from the House Report is virtually identical to that which appears in the House Report of the 1948 revision of the Criminal Code, see n. 9, *supra*. In view of the express disavowals in the House and Senate Reports on the revisions of both the Criminal Code, see *supra*, at 468–469, and the Judicial Code, see n. 10, *supra,* it would seem difficult at best to argue that a change in the substantive law could nevertheless be effected by a change in the language of a statute without any indication in the Reviser's Note of that change. It is not tenable to argue that the Reviser's Note to § 3692, although it explained in detail what words were deleted from and added to what had been § 11 of the Norris-LaGuardia Act, simply did not bother to explain at all, much less in detail, that an admittedly substantial right was being conferred on potential contemnors that had been rejected in the defeat of the Ball amendment the previous year and that, historically, contemnors had never enjoyed.[11]

---

[11] This point was clearly made by the Law Revision Counsel to the House subcommittee which held joint hearings on the revisions to the Judicial and Criminal Codes:

"There is one thing that I would like to point out . . . and that is the rule of statutory construction.

"In the work of revision, principally codification, as we have

In *Tidewater Oil Co. v. United States*, 409 U. S. 151 (1972), the Court applied the rule that revisions contained in the 1948 Judicial Code should be construed by reference to the Reviser's Notes. The question was whether a change in the language of 28 U. S. C. § 1292 (a)(1), made in the 1948 revision of the Judicial Code, had modified a longstanding policy under § 2 of the Expediting Act of 1903, 32 Stat. 823, as amended, 15 U. S. C. § 29, providing generally that this Court should have exclusive appellate jurisdiction over civil antitrust

done here, keeping revision to a minimum, I believe the rule of statutory construction is that a mere change of wording will not effect a change in meaning unless a clear intent to change the meaning is evidenced.

"To find out the intent, I think the courts would go to the report of the committee on the bills and these reports are most comprehensive. We have incorporated in them . . . notes to each section of the bills, both the criminal code and the judicial code.

"It is clearly indicated in each of those revisers' notes whether any change was intended so that merely because we have changed the language—we have changed the language to get a uniform style, to avoid awkward expression, to state a thing more concisely and succinctly—but a mere change in language will not be interpreted as an intent to change the law unless there is some *other* clear evidence of an intent to change the law." Hearings on Revision of Titles 18 and 28 of the United States Code before Subcommittee No. 1 of the House Committee on the Judiciary, 80th Cong., 1st Sess., 40 (1947) (emphasis added).

This statement is particularly persuasive in view of the fact that its maker, Mr. Zinn, had served as Counsel to the Committee on Revision of the Laws for the previous eight years; the House Report on the revision of the Criminal Code pointed out that Mr. Zinn had, for that Committee, "exercised close and constant supervision" over the work of the revisers who prepared the revision. H. R. Rep. No. 304, 80th Cong., 1st Sess., 3 (1947). The nature of the revision process itself requires the courts, including this Court, to give particular force to the many express disavowals in the House and Senate Reports of any intent to effect substantive changes in the law.

actions brought by the Government. Section 1292 (a) (1), as revised, was susceptible of two constructions, one of which would have resulted in a change in that policy. After emphasizing that "the function of the Revisers of the 1948 Code was generally limited to that of consolidation and codification," we invoked the "well-established principle governing the interpretation of provisions altered in the 1948 revision . . . that 'no change is to be presumed unless clearly expressed.'" 409 U. S., at 162, quoting *Fourco Glass Co.* v. *Transmirra Corp.*, 353 U. S., at 228. After going to the committee reports, the Court went to the Reviser's Notes and, in the Note to § 1292 (a)(1), found no affirmative indication of a substantive change. On this basis, the Court refused to give § 1292 (a)(1) as revised the "plausible" construction urged by respondents there.

In this case, involving the 1948 revision of the Criminal Code, the House and Senate Reports caution repeatedly against reading substantive changes into the revision, and the Reviser's Note to § 3692 gives absolutely no indication that a substantive change in the law was contemplated. In these circumstances, our cases and the canon of statutory construction which Congress expected would be applied to the revisions of both the Criminal and Judicial Codes, require us to conclude, along with all the lower federal courts having considered this question since 1948, save one, that § 3692 does not provide for trial by jury in contempt proceedings brought to enforce an injunction issued at the behest of the Board in a labor dispute arising under the Labor Management Relations Act.[12]

---

[12] *Madden* v. *Grain Elevator, Flour & Feed Mill Workers,* 334 F. 2d 1014 (CA7 1964), cert. denied, 379 U. S. 967 (1965) (§ 10 (*l*) proceeding); *Schauffler* v. *Local 1291, International Longshoremen's Assn.,* 189 F. Supp. 737 (ED Pa. 1960), rev'd on other grounds, 292

## IV

We also agree with the Court of Appeals that the union petitioner had no right to a jury trial under Art. III, § 2, and the Sixth Amendment. *Green* v. *United States,* 356 U. S. 165 (1958), reaffirmed the historic rule that state and federal courts have the constitutional power to punish any criminal contempt without a jury trial. *United States* v. *Barnett,* 376 U. S. 681 (1964), and *Cheff* v. *Schnackenberg,* 384 U. S. 373 (1966), presaged a change in this rule. The constitutional doctrine which emerged from later decisions such as *Bloom* v. *Illinois,* 391 U. S. 194 (1968); *Frank* v. *United States,* 395 U. S. 147 (1969); *Baldwin* v. *New York,* 399 U. S. 66 (1970); *Taylor* v. *Hayes,* 418 U. S. 488 (1974); and *Codispoti* v. *Pennsylvania,* 418 U. S. 506 (1974), may be capsuled as follows: (1) Like other minor crimes, "petty" contempts may be tried

F. 2d 182 (CA3 1961) (§ 10 (*l*) proceeding). See *United States* v. *Robinson,* 449 F. 2d 925 (CA9 1971) (suit for injunctive relief brought by the United States against employees of a federal agency); *Brotherhood of Locomotive Firemen & Enginemen* v. *Bangor & Aroostook R. Co.,* 127 U. S. App. D. C. 23, 380 F. 2d 570, cert. denied, 389 U. S. 327 (1967) (proceeding under Railway Labor Act, 45 U. S. C. § 151 *et seq.*); *NLRB* v. *Red Arrow Freight Lines,* 193 F. 2d 979 (CA5 1952) (proceeding brought for violation of § 7 of the Wagner Act, as amended by the Taft-Hartley Act, now 29 U. S. C. § 157); *In re Winn-Dixie Stores, Inc.,* 386 F. 2d 309 (CA5 1967) (proceedings for violation of § 7 of the Wagner Act, as amended by the Taft-Hartley Act, now 29 U. S. C. § 157); *Mitchell* v. *Barbee Lumber Co.,* 35 F. R. D. 544 (SD Miss. 1964) (proceedings brought for violation of order issued for violation of Fair Labor Standards Act, 29 U. S. C. § 201 *et seq.*); *In re Piccinini,* 35 F. R. D. 548 (WD Pa. 1964) (proceedings brought for violation of consent decree involving Fair Labor Standards Act, 29 U. S. C. § 201 *et seq.*). The only decision to the contrary, *In re Union Nacional de Trabajadores,* 502 F. 2d 113 (CA1 1974), was decided without express reference to any of the pertinent legislative history of the Wagner and Taft-Hartley Acts; the panel of the Court of Appeals was itself divided over the correct result, see *id.,* at 121–122 (Campbell, J., dissenting).

without a jury, but contemnors in serious contempt cases in the federal system have a Sixth Amendment right to a jury trial; (2) criminal contempt, in and of itself and without regard to the punishment imposed, is not a serious offense absent legislative declaration to the contrary; (3) lacking legislative authorization of more serious punishment, a sentence of as much as six months in prison, plus normal periods of probation, may be imposed without a jury trial; (4) but imprisonment for longer than six months is constitutionally impermissible unless the contemnor has been given the opportunity for a jury trial.

This Court has as yet not addressed the question whether and in what circumstances, if at all, the imposition of a fine for criminal contempt, unaccompanied by imprisonment, may require a jury trial if demanded by the defendant. This case presents the question whether a fine of $10,000 against an unincorporated labor union found guilty of criminal contempt may be imposed after denying the union's claim that it was entitled to a jury trial under the Sixth Amendment. Local 70 insists that where a fine of this magnitude is imposed, a contempt cannot be considered a petty offense within the meaning of 18 U. S. C. § 1 (3), and that its demand for a jury trial was therefore erroneously denied.

We cannot agree. In determining the boundary between petty and serious contempts for purposes of applying the Sixth Amendment's jury trial guarantee, and in holding that a punishment of more than six months in prison could not be ordered without making a jury trial available to the defendant, the Court has referred to the relevant rules and practices followed by the federal and state regimes, including the definition of petty offenses under 18 U. S. C. § 1 (3). Under that section, petty offenses are defined as those crimes "the penalty for which

does not exceed imprisonment for a period of six months or a fine of not more than $500, or both." But in referring to that definition, the Court accorded it no talismanic significance; and we cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different. It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union. Indeed, although we do not reach or decide the issue tendered by the respondent—that there is no constitutional right to a jury trial in any criminal contempt case where only a fine is imposed on a corporation or labor union, Brief for Respondent 36—we cannot say that the fine of $10,000 imposed on Local 70 in this case was a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake. This union, the respondent suggests, collects dues from some 13,000 persons; and although the fine is not insubstantial, it is not of such magnitude that the union was deprived of whatever right to jury trial it might have under the Sixth Amendment. We thus affirm the judgment of the Court of Appeals.

*Affirmed.*

Mr. Justice Douglas, dissenting.

## I

I believe that petitioners are entitled to trial by jury under 18 U. S. C. § 3692, which provides that, with certain exceptions not here material:

> "In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury . . . ."

In enacting this language in 1948, Congress reaffirmed the purpose originally expressed in § 11 of the Norris-LaGuardia Act, 47 Stat. 72, 29 U. S. C. § 111 (1946 ed.). That Act was intended to shield the organized labor movement from the intervention of a federal judiciary perceived by some as hostile to labor. The Act severely constrained the power of a federal court to issue an injunction against any person "participating or interested in a labor dispute." Section 11 provided for trial by jury in "all cases arising under this Act in which a person shall be charged with contempt." In the context of the case now before us, I view this section as affording, at the very least, a jury trial in any criminal contempt proceeding involving an alleged violation of an injunction issued against a participant in a "labor dispute." Any such injunction issued by a federal court was one "arising under" the Act, for it could have been issued only in accordance with the Act's prescriptions.[1] The evident congressional intent was to provide

---

[1] As initially enacted by the Senate, § 11 contained no "arising under" language and would have applied in all criminal contempt proceedings, whether or not involving an injunction issued in a

for the interposition of a jury when disobedience of such an injunction was alleged.[2]

For the reasons stated by MR. JUSTICE STEWART, *post,* at 485–486, I am persuaded that §§ 10 (h) and 10 (*l*) of the National Labor Relations Act made inapplicable only the anti-injunction provisions of the Norris-LaGuardia Act and did not disturb § 11. The broad mandate of § 11, to afford trial by jury in a contempt proceeding involving an injunction issued in a labor dispute, was thus continued in § 3692.[3] See *Green* v. *United States,* 356 U. S. 165, 217 (1958) (Black, J., dissenting).

## II

I would reverse the judgment against Local 70 on constitutional grounds.[4] Article III, § 2, of the Constitution provides that "[t]he Trial of all Crimes, except

labor dispute. See S. Rep. No. 163, 72d Cong., 1st Sess., 23 (1932); 75 Cong. Rec. 4510–4511, 4757–4761 (1932). The "arising under" language was added by the House-Senate conferees to restrict the scope of § 11 to labor disputes. See *id.,* at 6336–6337, 6450.

[2] This construction is consistent with the remark in *United States* v. *Mine Workers,* 330 U. S. 258, 298 (1947), that "§ 11 is not operative here, for it applies only to cases 'arising under this Act,' and we have already held that the restriction upon injunctions imposed by the Act do [*sic*] not govern this case." As the entire sentence makes clear, § 11 was "not operative" because the Court had found that the underlying dispute between the Government and the Mine Workers was not the kind of "labor dispute" to which the Norris-LaGuardia Act had been addressed. See 330 U. S., at 274–280. See also *id.,* at 328–330 (Black and DOUGLAS, JJ., concurring and dissenting).

[3] We deal here with criminal contempt proceedings. Whether § 3692 affords trial by jury in civil contempt proceedings is a question not presented here and on which, accordingly, I express no opinion.

[4] Petitioner Muniz apparently decided not to raise the constitutional issue in this Court; our grant of certiorari on the issue thus extended only to Local 70. 419 U. S. 992 (1974).

in Cases of Impeachment, shall be by Jury . . . ." And the Sixth Amendment provides in pertinent part:

"In *all* criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." (Emphasis added.)

The Court fails to give effect to this language when it declares that a $10,000 fine is not "of such magnitude that a jury should have been interposed to guard against bias or mistake." *Ante,* at 477. I have previously protested this Court's refusal to recognize a right to jury trial in cases where it deems an offense to be "petty." [5] But even the "petty offense" exception cannot justify today's result, for it is impossible fairly to characterize either the offense or its penalty as "petty." [6] Disobedience of an injunction obtained by the Board is hardly a transgression trivial by its nature; and the imposition of a $10,000 fine is not a matter most locals would take lightly. In any event, the Constitution deprives us of the power to grant or withhold trial by jury depending upon our assessment of the substantiality of the penalty. To the argument that the Framers could not have intended to provide trial by jury in cases involving only

___

[5] *E. g., Baldwin* v. *New York,* 399 U. S. 66, 74–76 (1970) (Black, J., joined by DOUGLAS, J., concurring in judgment); *Frank* v. *United States,* 395 U. S. 147, 159–160 (1969) (Black, J., joined by DOUGLAS, J., dissenting). See also *Johnson* v. *Nebraska,* 419 U. S. 949 (1974) (DOUGLAS, J., dissenting from denial of certiorari).

[6] As noted in my dissenting opinion in *Cheff* v. *Schnackenberg,* 384 U. S. 373, 386–391 (1966), the "petty offense" doctrine began as an effort to identify offenses that were by their nature "petty," and the punishment prescribed or imposed was one factor to be considered in characterizing the offense. Under the Court's current formulation, the penalty is of controlling significance. See *Codispoti* v. *Pennsylvania,* 418 U. S. 506, 512 (1974).

"small" fines and imprisonment, the response of Justices McReynolds and Butler in *District of Columbia* v. *Clawans*, 300 U. S. 617, 633–634 (1937) (separate opinion), is apt:

> "In a suit at common law to recover above $20.00, a jury trial is assured. And to us, it seems improbable that while providing for this protection in such a trifling matter the framers of the Constitution intended that it might be denied where imprisonment for a considerable time or liability for fifteen times $20.00 confronts the accused."

I would follow the clear command of Art. III and the Sixth Amendment and reverse the judgment as to Local 70.

Mr. Justice Stewart, with whom Mr. Justice Marshall and Mr. Justice Powell join, dissenting.

In 1948 Congress repealed § 11 of the Norris-LaGuardia Act, 47 Stat. 72, 29 U. S. C. § 111 (1946 ed.), which provided a right to a jury trial in cases of contempt arising under that Act, and added § 3692 to Title 18 of the United States Code, broadly guaranteeing a jury trial "[i]n all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or  growing out of a labor dispute." I cannot agree with the Court's conclusion that this congressional action was without any significance and that § 3692 does not apply to any contempt proceedings involving injunctions that may be issued pursuant to the National Labor Relations Act, 49 Stat. 449, as amended, 29 U. S. C. § 151 *et seq.* Accordingly, I would reverse the judgment before us.

The contempt proceedings in the present case arose out of a dispute between Local 21 of the International Typographical Union and the San Rafael Independent Jour-

nal. Local 21 represents the Independent Journal's composing room employees. Following expiration of the old collective-bargaining agreement between Local 21 and the Independent Journal, negotiations for a new agreement reached an impasse. As a result, Local 21 instituted strike action against the Independent Journal. See *San Francisco Typographical Union No. 21,* 188 N. L. R. B. 673, enforced, 465 F. 2d 53 (CA9). The primary strike escalated into illegal secondary boycott activity, in which four other unions, including the petitioner Local 70, participated. The National Labor Relations Board, through its Regional Director, obtained an injunction pursuant to § 10 (*l*) of the National Labor Relations Act, as added, 61 Stat. 149, and as amended, 29 U. S. C. § 160 (*l*), to bring a halt to that secondary activity. When the proscribed secondary conduct continued, apparently in willful disobedience of the § 10 (*l*) injunction, criminal contempt proceedings were instituted. See *ante,* at 456–457.

Section 3692 unambiguously guaranteees a right to a jury trial in such criminal contempt proceedings. The section provides in pertinent part:

> "In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed."

Section 3692 thus expressly applies to more than just those cases of contempt arising under the Norris-La-Guardia Act. By its own terms the section encompasses *all* cases of contempt arising under any of the several *laws* of the United States governing the issuance of injunctions in cases of a "labor dispute." Section 10 (*l*) of

the National Labor Relations Act, which authorized the injunction issued by the District Court, is, in the context of this case, most assuredly one of those laws.

Section 10 (*l*) requires the Board's regional official to petition the appropriate district court for injunctive relief pending final Board adjudication when he has "reasonable cause" to believe that a labor organization or its agents have engaged in certain specified unfair labor practices.[1] Although not all unfair labor practices potentially subject to § 10 (*l*) injunctions need arise out of a "labor dispute," both the primary strike and the secondary activity in this case concerned the "terms or conditions of employment" of Local 21 members. Thus, the injunction and subsequent contempt proceedings clearly involved a "labor dispute" as that term is defined in the Norris-LaGuardia Act and the National Labor Relations Act.[2] Accordingly, § 10 (*l*) is here a law governing the issuance of an injunction in

---

[1] Section 10 (*l*), as enacted in 1947, 61 Stat. 149, provided that whenever the Board's regional official has "reasonable cause" to believe the truth of a charge of illegal secondary boycotting or minority picketing, the official "shall," on behalf of the Board, petition a district court for appropriate injunctive relief pending final Board adjudication. Once reasonable cause is found, a Board petition for temporary relief under § 10 (*l*) is mandatory. See S. Rep. No. 105, 80th Cong., 1st Sess., 8, 27. Congress in 1959 added charges of illegal hot cargo agreements and recognitional picketing to the mandatory injunction provision of § 10 (*l*). 73 Stat. 544.

[2] "Labor dispute" as defined for the purpose of § 11 of the Norris-LaGuardia Act, upon which § 3692 was based, included "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 47 Stat. 73. Section 2 (9) of the National Labor Relations Act, 29 U. S. C. § 152 (9), defines "labor dispute" in virtually identical language.

a case growing out of a labor dispute, and the criminal contempt proceedings against the petitioners clearly come within the explicit reach of § 3692.[3]

There is nothing in the rather meager legislative history of § 3692 to indicate that, despite the comprehensive language of the section, Congress intended that it was to apply only to injunctions covered by the Norris-LaGuardia Act. The revisers did not say that § 3692 was intended to be merely a recodification of § 11 of the Norris-LaGuardia Act.[4] Rather, the revisers said that the section was "based on" § 11 and then noted without additional comment the change in language from reference to specific sections of Norris-LaGuardia to the more inclusive "laws of the United States . . . ." H. R. Rep. No. 304, 80th Cong., 1st Sess., A176. In contrast, although the recodification of 18 U. S. C. § 402, dealing with contempts constituting crimes, was also "based on" prior law, the revisers specifically noted that "[i]n transferring these sections to this title and in consolidating them numerous changes of phraseology were

---

[3] While the respondent concedes that unfair labor practices often arise out of a "labor dispute," he argues that the National Labor Relations Act is not essentially a law "governing the issuance of injunctions or restraining orders" in cases "involving or growing out of a labor dispute." Although it may be true that not all provisions of the Act authorizing restraining orders are properly classified as such laws, it is clear that Congress concluded that at least some provisions were. Otherwise, there would have been no reason for Congress to have specifically exempted the jurisdiction of courts "sitting in equity" under § 10 of the Act from the limitations of Norris-LaGuardia, which apply only in cases involving requests for injunctive relief growing out of a labor dispute. See *In re Union Nacional de Trabajadores,* 502 F. 2d 113, 118 (CA1).

[4] Any such intention would be inconsistent with the decision to repeal § 11 and to replace it with a broadly worded provision in the title of the United States Code dealing generally with "Crimes and Criminal Procedure."

necessary which do not, however, change their meaning or substance." H. R. Rep. No. 304, *supra,* at A30; 18 U. S. C., p. 4192. The brief legislative history of § 3692 is, accordingly, completely consistent with the plain meaning of the words of that section.

Nothing in § 10 (*l*), or in any other provision of the National Labor Relations Act, requires that § 3692 be given any different meaning in cases involving injunctions issued pursuant to the Act. To be sure, § 10 (*l*) provides that, upon the filing of a Board petition for a temporary injunction, "the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . ." But requiring a jury trial prior to finding a union or union member in criminal contempt for violation of a § 10 (*l*) injunction is entirely compatible with that provision. Although such a reading of § 3692 provides procedural protection to the alleged contemnor, it in no way limits the *jurisdiction* of the district court to grant an injunction at the request of the Board.

Similarly, § 10 (h) does not indicate a congressional intent to eliminate the jury trial requirement for criminal contempts arising from disobedience of injunctions issued pursuant to the National Labor Relations Act.[5] That

---

[5] It may be questioned whether § 10 (h) has any relevance at all to the issue before us. As enacted in 1935, § 10 (h) was concerned solely with the jurisdiction of the courts of appeals (and district courts "if all the . . . courts of appeals to which application may be made are in vacation," § 10 (e)) to modify and enforce Board orders *following* an administrative hearing and entry of findings by the Board. Section 10 (h) was retained without significant change at the time of the 1947 Taft-Hartley amendments to the National Labor Relations Act: "Sections 10 (g), (h), and (i) of the present act, concerning the effect upon the Board's orders of enforcement and review proceedings, making inapplicable the provisions of the

section provides in part that "[w]hen granting appropriate temporary relief or a restraining order, . . . the jurisdiction of courts sitting in equity shall not be limited by the Act entitled 'An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes,' approved March 23, 1932 (U. S. C., Supp. VII, title 29, secs. 101–115)." Although § 10 (h) thus cites parenthetically all the sections of the Norris-LaGuardia Act, including § 11's jury trial provision, which was codified at 29 U. S. C. § 111, it does so solely as an additional means of identifying the Act. Substantively § 10 (h), like § 10 (l), provides only that the *jurisdiction* of equity courts shall not be limited by the Norris-LaGuardia Act. But Norris-LaGuardia, as its title indicates, was enacted to limit jurisdiction "and for other purposes." Section 11, upon which § 3692 was based, was not concerned with jurisdiction; it provided *procedural* protections to alleged contemnors, one of the Act's "other purposes."

In contrast, when Congress provided for the issuance of injunctions during national emergencies as part of the Taft-Hartley Act, 29 U. S. C. §§ 176–180, it did not merely state that the jurisdiction of district courts under those circumstances is not limited by Norris-LaGuardia. Rather, it provided simply and broadly that all of the provisions of that Act are inapplicable. 29 U. S. C. § 178 (b).[6]

Norris-LaGuardia Act in proceedings before the courts, were unchanged either by the House bill or by the Senate amendment, and are carried into the conference agreement." H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. (House Managers' statement), 57. The section would thus seem at the most to be of limited relevance in determining congressional intent concerning the procedures to be used in district courts issuing and enforcing § 10 (l) injunctions *prior* to final adjudication of unfair labor practice charges by the Board.

[6] The principal piece of legislative history offered as evidence of an affirmative congressional intent to free from the requirements of

If, contrary to the above discussion, there is any ambiguity about § 3692, it should nonetheless be read as extending a right to a jury trial in the criminal contempt proceedings now before us under the firmly established canon of statutory construction mandating that any ambiguity concerning criminal statutes is to be resolved in favor of the accused. See, *e. g., United States* v. *Bass,* 404 U. S. 336, 347; *Rewis* v. *United States,* 401 U. S. 808, 812; *Smith* v. *United States,* 360 U. S. 1, 9. On the other hand, there is no sound policy argument for limiting the scope of § 3692. A guarantee of the right to a jury trial in cases of criminal contempt for violation of injunctions issued pursuant to § 10 (*l*) does not restrict the ability of the Board's regional official to seek, or the power of the District Court to grant, temporary injunctive relief to bring an immediate halt to secondary boycotts and recognitional picketing pending adjudication of unfair labor practice charges before the Board. Nor does it interfere with the authority of the District Court to insure prompt compliance with its injunction through the use of coercive civil contempt sanctions.[7] Indeed,

---

Norris-LaGuardia criminal contempt proceedings for violations of a § 10 (*l*) injunction is a statement by Senator Ball made during debate over the Senator's proposed amendment to that section. See 93 Cong. Rec. 4834. Particularly in view of the complete absence of any support for Senator Ball's expansive interpretation of §10 (*l*) in the committee and conference reports, see, *e. g.,* S. Rep. No. 105, 80th Cong., 1st Sess., 8, 27; H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. (House Managers' statement), 57, that individual expression of opinion is without significant weight in the interpretation of the statute. *McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488, 493–494; *Lapina* v. *Williams,* 232 U. S. 78, 90.

[7] On its face § 3692, which guarantees to "the accused" the right to a speedy and public trial, by an impartial jury, in language identical to the Sixth Amendment's guarantee of a jury trial in criminal cases, appears to be limited to trials for criminal contempt. That construction is also consistent with the decision of Congress to place

construing § 3692 as it is written, so as to include this kind of an injunction issued pursuant to the National Labor Relations Act, would not even affect the power of the court to impose criminal contempt sanctions. It would only require that prior to imposition of criminal punishment for violation of a court order the necessary facts must be found by an impartial jury, rather than by the judge whose order has been violated.[8]

the provision in Title 18, dealing with crimes and criminal procedure. Moreover, while it is clear that a trial for criminal contempt is an independent proceeding and "no part of the original cause," *Michaelson* v. *United States ex rel. Chicago, St. P., M. & O. R. Co.,* 266 U. S. 42, 64, civil contempt proceedings to insure compliance with an injunction are extensions of the original equitable cause of action. See *id.,* at 64–65. It is therefore arguable that § 10 (*l*)'s explicit statement that the "jurisdiction" of the district courts shall not be affected by "any other provision of law" renders inapplicable any otherwise relevant statutory requirement of a jury trial for civil contempts. See *In re Union Nacional de Trabajadores,* 502 F. 2d, at 119–121.

[8] Although injunctive relief under §§ 10 (j) and (*l*) is sought by the Board acting on behalf of the public rather than to vindicate private economic interests, this fact has little significance in considering the policy justifications for requiring a jury trial in criminal contempt proceedings. Regardless of whether the Board or an employer has sought the injunction, in the absence of a jury trial the judge who granted the order will be given complete authority to impose criminal punishment if he finds that his injunction has been deliberately disobeyed. The existence of this unbridled power in district court judges prior to 1932 was one of the principal factors leading to enactment of the Norris-LaGuardia Act, and in particular passage of the § 11 jury trial requirement. See generally A. Cox & D. Bok, Cases and Materials on Labor Law 75–76 (7th ed.). Accordingly, the accommodation of § 10 (*l*) and § 3692 "which will give the fullest possible effect to the central purposes of both [statutes]," *Sinclair Refining Co.* v. *Atkinson,* 370 U. S. 195, 216 (BRENNAN, J., dissenting), is to recognize the Board's power to seek temporary injunctive relief under § 10 (*l*) without regard to the limitations of Norris-LaGuardia, and to permit the issuing court to coerce

In sum, the plain language of § 3692 and the absence of any meaningful contradictory legislative history, together with the established method of construing criminal statutes, require that § 3692 be interpreted to include a right to a jury trial in criminal contempt proceedings for violation of § 10 (*l*) injunctions.  Accordingly, I would reverse the judgment of the Court of Appeals.

---

obedience through civil contempt proceedings.  But when the court deems it necessary to impose after-the-fact punishment through criminal contempt proceedings, § 3692 must be read to mean what it says—the accused contemnor has the right to a jury trial.  See *In re Union Nacional de Trabajadores, supra,* at 121.