April 11, 1977

## 77–19  MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

### Interpretation of the Grandfather Clause in 18 U.S.C. § 709—Use of Word "Federal" in Name of Insurance Company

This memorandum is in response to a request for this Office to resolve a difference of opinion within the Criminal Division concerning the correct interpretation of 18 U.S.C. § 709. For the reasons stated hereafter, we have concluded that the grandfather clause enacted as part of the predecessor of § 709 should be construed narrowly to protect only the proprietary interest already in existence in 1926 with regard to the full name of a firm.

### I.  Background

A dispute documented in various memorandums submitted to this office has arisen with regard to whether an insurance company presently using the word "Federal" in its name may continue the use of the word "Federal" in the name given to the corporate entity to be created after the merger or consolidation of the insurance company with another company. This new name would not be identical to the insurance company's present name. The Criminal Division has, in the past, issued letters to various institutions declaring that such name changes as the one contemplated here are *not in violation* of 18 U.S.C. § 709, which reads, in pertinent part, as follows:

> Whoever . . . uses the words "national", "Federal", "United States", "reserve", or "deposit insurance" as part of the business or firm name of a business entity engaged in the . . . insurance . . . business [shall be punished as a misdemeanant].
>
> ＊ ＊ ＊ ＊ ＊ ＊ ＊
>
> This section shall not make unlawful the use of any name or title which was lawful on the date of enactment of this title.

The essence of the difference appears to be whether the grandfather clause applies to all name changes where both the new and old names contain one or more of the prohibited words.

## II.   The Pertinent Statute and Its Legislative History

Although the various memorandums generated within the Criminal Division, as well as correspondence from the insurance company's counsel, focus to a great extent on the language and meager legislative history of 18 U.S.C. § 709, we think that focus is somewhat misplaced.

Section 709 is a conglomerate provision assembled from other statutes as part of the 1948 revision of the Federal Criminal Code. Being part of that 1948 revision, interpretation of § 709 is governed by principles laid down by the Supreme Court in *Muniz* v. *Hoffman,* 422 U.S. 454 (1975). The basic principle established by *Muniz* relevant here is that the 1948 code revision did not change the substance of any legislation that was placed in the criminal code by that revision. *Id.* at 468–70.

Thus, we proceed to analyze the question on the assumption that the relevant law is not strictly § 709 as it presently reads, but rather its predecessor, which was enacted in 1926. Section 2 of the 1926 Act, 44 Stat. 628, provided, in pertinent part:

> That no . . . firm . . . engaged in the . . . insurance . . . business shall use the word "Federal", the words "United States", or the word "reserve", or any combination of such words, as a portion of its corporate, firm or trade name or title . . . . *Provided, however,* that provisions of this section shall not apply to . . . any . . . firm . . . actually engaged in business under such name or title prior to the passage of this Act.

The question is whether the grandfather clause was intended by Congress to exempt from the prohibition established by § 2 changes in the name of an institution or business covered by that section so long as the old name contained one of the prohibited words. We believe that the answer to this question turns upon the meaning to be ascribed to the words "actually engaged in business under such name or title prior to the passage of this Act."

With regard to this critical language in § 2, we think that the most natural reading of the words "such name or title" is that they refer to the complete name of an entity that contained in 1926 one or more of the words prohibited from future use by § 2. If Congress in 1926 had intended to exempt not only existing names but new and different names, so long as the new name was created by an entity previously bearing an exempted name, it could have done so in language much more explicit than the language it used. Indeed, if the exemption was intended to go to the entity, rather than the name, language appropriate to achieve that result could easily have been used.

We also think that the language actually used must be interpreted in context, *i.e.*, as part of a grandfather clause exempting certain conduct from criminal sanctions that would otherwise be subject to sanctions.

As a general proposition, grandfather clauses are designed to preserve the rights of persons who would otherwise be divested of those rights by the operation of a new law.[1] Although they may be included by a legislature to avoid any constitutional "taking" problem with regard to new legislation, they may also be simple acts of grace on the part of a legislature or represent otherwise rational policymaking on the part of the legislature. *See, generally, City of New Orleans* v. *Dukes,* 96 S. Ct. 2513 (1976).

The position might be taken that the grandfather clause in § 2 was included by Congress because Congress did not wish to deprive existing enterprises of the goodwill attached to their names, and probably could not do so without compensation. Whether this was the reason for the inclusion of the grandfather clause in 1926 cannot be gleaned from the legislative history of the Act, but the legislative history does support the proposition that the overall intent of the Act was to prevent the exploitative use of certain words by companies as well as to prevent the public from being misled by the use of such words. *See* H.R. Rep. No. 1065, 69th Cong., 1st Sess. (1926); S. Rep. No. 514, 69th Cong., 1st Sess. (1926).

Given this overall intent, we think that several assumptions may be made concerning the grandfather clause. First, Congress, even though condemning the then current exploitation and deception associated with the use of the prohibited words, was, for whatever reason, willing to permit firms already engaged in such conduct to continue to do so. Second, Congress, by including the grandfather clause, did not implicitly approve of such continued use of the prohibited words; Congress merely tolerated the continued use of those words by firms already using them.

Thus, unlike situations in which a grandfather clause permits activity to continue that is not *malum in se* or *malum prohibitum,* the activity permitted to continue by the grandfather clause here in question is, at a minimum, *malum prohibitum.*[2] Although we have been able to find no case law directly on point, we think that any grandfather clause sanctioning the continuance of activity found by the legislature to be harmful to the general public should be given the narrowest construction

---

[1] Whether a name change occurs as part of a merger or consolidation or simply because of a business decision made by a company, is irrelevant to the operation of § 2.

[2] There can be no doubt on this point. In the Senate and House reports on the 1926 Act, *supra,* there appear in detail examples of the abusive and deceptive practices that made the legislation necessary. Yet, under the grandfather clause the very situations documented in support of the legislation were permitted to continue unabated.

possible consistent with the overall purposes of the Act in which it appears. We therefore conclude that the words "such name or title" should be read to include only those full names or titles that were in existence in 1926 when that provision was adopted.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
