Anderson v. Williard

N. CALHOUN ANDERSON AND WIFE, SUE S. ANDERSON v. G. JAY WILLIARD AND WIFE, BESSIE M. WILLIARD AND COLTRANE CONSTRUCTION CO., INC.

No. 7118SC22

(Filed 28 April 1971)

1. Contempt of Court § 3— landowner enjoined from building a carport — landowner's mailing of postcards depicting the carport

A landowner who was temporarily enjoined from constructing a carport was not guilty as for contempt in mailing to 125 persons, including the judge who signed the injunction, a postcard bearing a picture of the partially completed carport and a message reading in part: "Wishing You a Prosperous New Year—Williard's Future Car Shed . . . The unfinished part of our car shed shows where work stopped after a court order signed by our next door neighbor was served . . . Our side will be heard next year in court." G.S. 5-8.

2. Contempt of Court § 3— landowner enjoined from building a carport — landowner's mailing of messages

A landowner who was temporarily enjoined from constructing a carport was not guilty as for contempt in mailing to the directors of an athletic club, whose president had signed an affidavit in support of the injunction, a copy of the president's affidavit and the follow- ing message: "Enclosed you will find a copy that will explain why I can't support the Blue and White Club. Your president does not even live on Wynnewood Avenue [the landowner's address]." G.S. 5-8.

3. Contempt of Court § 3— threats by landowner — intimidation of wit- nesses — punishable as for contempt

A landowner's threats that were designed to intimidate the plain- tiffs and their witnesses from testifying in support of plaintiffs' efforts to enforce a restrictive covenant against the landowner, held punishable as for contempt.

4. Contempt of Court § 6— show cause hearing — evidence of threats — sufficiency of notice to contemnor

A landowner who was cited as for contempt had sufficient notice that the plaintiffs would offer testimony of threats that the land- owner had made to them, notwithstanding there was no allegation of threats either in the plaintiff's petition for a show-cause order or in the show-cause order itself.

5. Contempt of Court § 3— landowner's guilt as for contempt — threats to adjoining landowner

Landowner's threats to the plaintiffs that, if the plaintiffs car- ried out their suit to enforce a restrictive covenant against the build- ing of defendant's carport, the landowner would sell to an undesirable person or would build a brick wall 20 feet high along the plaintiffs' adjoining property line, held sufficient to support an order finding the landowner guilty as for contempt.

Anderson v. Williard

APPEAL by male defendant from *Collier, Judge of Superior Court,* 22 June 1970 Session, High Point Division of GUILFORD Superior Court.

This action was instituted by plaintiffs on 18 September 1969 to restrain defendants from constructing a carport in violation of the restrictive covenants applicable to the lots in the subdivision. Specifically, plaintiffs allege that the restrictive covenants prevent construction on the lots in the subdivision nearer than ten (10) feet of the side lines of the lots, and that defendants are building the carport within two (2) feet of the side line of defendants' lot.

A restraining order and order to show cause were issued 18 September 1969. A hearing was held upon return to the show cause order, and an order was entered 15 October 1969 continuing the restraining order in effect until the trial of the action on the merits.

In November 1969 one Bill McKenzie, acting as president of the High Point Blue-White Club (an organization promoting athletics in high school), sent out numerous letters soliciting contributions. One was sent to defendant G. Jay Williard. Defendant Williard typed the following message in the margin of the letter he had received: "Gentlemen: Enclosed you will find a copy that will explain why I can't support the Blue and White Club. Bill McKenzie does not even live on Wynnewood Avenue. /s/ G. Jay Williard."

The same Bill McKenzie who sent the above-described letter had also executed an affidavit which was used by plaintiff in securing the restraining order heretofore issued. In the affidavit McKenzie stated, among other things, the following: ". . . that in his opinion the construction of said garage by G. Jay Williard and wife within two feet of their west property line will irreparably damage the property of N. Calhoun Anderson and wife, and will diminish the value of his property to an extent in proportion to the nearness of his property to the property of G. Jay Williard and wife . . ."

Defendant prepared photo copies of the letter from McKenzie, along with defendant's message in the margin; he attached thereto photo copies of the affidavit executed by McKenzie in this lawsuit; and he mailed copies to directors and officers of the Blue-White Club.

In January 1970 defendant prepared a 6 x 9 inch postcard with a picture of the partially completed carport on one side of the card. On the same side of the card the following message appeared above the picture: "Wishing you a prosperous New Year." Below the picture the following message appeared: "Williard's future car shed—1109 Wynnewood Ave." On the reverse side of the card, printed in the left one-half was the following message:

"WISHING YOU A PROSPEROUS NEW YEAR
WILLIARD'S FUTURE CAR SHED
1109 WYNNEWOOD AVE.

This is a picture of our car shed as it stands today. The completed part was built by Coltrane Construction Company after a permit was issued by the city of High Point to do exactly what we have done. The city permit department wrote our neighbors telling them that a permit for such a building was about to be issued, and asked for any objections, if any. None were given.

The unfinished part of our car shed shows where work stopped on September 18 after a court order, signed by our next door neighbor, Sue and Calhoun Anderson, was served. Mr. Anderson represents Life Insurance Company of Virginia.

Our side will be heard next year in court."

A card as described above was sent to about 125 persons living in and around High Point, including many who had signed affidavits for plaintiffs, the male plaintiff's employer, and Judge Walter E. Crissman who had signed the restraining order in this case.

On 15 January 1970, plaintiffs filed a motion in the cause alleging the above-described conduct of defendant and asking that an order issue to defendant G. Jay Williard requiring him to appear and show cause why he should not be adjudged in contempt for mailing the Blue-White Club letter and the picture card described above.

A hearing was conducted before Judge Collier on 16 February 1970 at which time affidavits were offered and the plaintiffs and defendant G. Jay Williard testified under oath. Following receipt of the affidavits and the testimony the matter was continued from time to time upon agreement of the parties.

---
Anderson v. Williard
---

Thereafter on 22 June 1970, the parties and the attorneys appeared before Judge Collier and stated that they were unable to reach a settlement, that they had no further evidence or arguments to make, and that they were ready for the court to enter its findings and judgment.

There was plenary evidence at the 16 February 1970 hearing that defendant in fact mailed the Blue-White Club letter with his notation thereon, and that he mailed the picture card with the message thereon. Also, there was testimony from plaintiff of threats made by defendant to plaintiff and to prospective witnesses concerning what he would do if they persisted with this lawsuit. Judge Collier found facts in accordance with the evidence and concluded as follows:

> "The court further finds that said acts and conduct on the part of the said defendant were made for the purpose and with the intent, and that the same had a tendency, of embarrassing and intimidating witnesses and prospective witnesses in said law suit, to mislead prospective jurors and the public before said cause was heard upon its merits; to harass, annoy, and embarrass the plaintiffs before their friends and the public and to intimidate and threaten them from further prosecuting their law suit, and to interfere with the orderly processes of judicial procedure by misrepresenting, misleading and prejudicing the public and the court and were of such nature as tended to defeat, impair, impede, or prejudice the rights or remedies of the plaintiffs in said law suit.
>
> The court further finds that said defendant failed to publish the full facts in the cause, but colored said facts so as to bring into contempt and ridicule the court, and especially Judge Walter E. Crissman, who granted the temporary injunction."

Based upon his conclusions, Judge Collier adjudged that defendant was guilty as for contempt and imposed punishment. Contemnor appealed.

*Attorney General Morgan, by Staff Attorney Blackburn, for the State.*

*Morgan, Byerly, Post & Herring, by William L. Johnson, Jr., for contemnor.*

BROCK, Judge.

Our statute provides that "[e]very court of record has power to punish as for contempt when the act complained of was such as tended to defeat, impair, impede, or prejudice the rights or remedies of a party to an action then pending in court . . ." and that such power shall extend to all cases ". . . where attachments and proceedings as for contempt have been heretofore adopted and practiced in courts of record in this State to enforce the civil remedies or protect the rights of any party to an action." G.S. 5-8. "This principle is applied in numerous decisions. It has been held, for example, that a person who presents to the court a fraudulent claim for the payment of money, or willfully interposes a false answer, or decoys a witness or dissuades him from attending the trial, or insults, on account of an adverse verdict, a juror who has been discharged, or willfully does any other act which tends to defeat the rights of any party to a pending action may be punished as for contempt. [citations]." *Snow v. Hawkes*, 183 N.C. 365, 111 S.E. 621.

[1, 2] We are inclined to agree with defendant that his acts in mailing the Blue-White Club letter cannot fairly be considered as intimidating or dissuading witnesses from appearing for trial. Also we are inclined to agree with defendant that his mailing of the 125 picture cards with his message thereon cannot fairly be considered as intimidating or dissuading witnesses or the plaintiffs. Nor do we consider the message on the picture card as a coloring of the facts so as to bring the court or Judge Crissman into ridicule. Obviously contemnor's acts with respect to both the Blue-White letter and the picture card were brought on because he was disgruntled with having been stopped from doing what he wanted to do. Both acts seem to us to be rather intemperate responses to an order denying him the right to use his property as he pleased, and their prime tendency seems to be to bring on disrespect for the author, not the court.

[3] The verbal threats to plaintiffs and other witnesses are, however, quite another matter. It is obvious that those threats were designed to intimidate plaintiffs and their witnesses and to dissuade them from testifying in the case or otherwise pursuing the enforcement of the restrictive covenants. Such conduct is punishable as for contempt.

[4] Defendant contends that the testimony concerning the threats was incompetent and should not be considered because

neither the petition for the order to show cause, nor the order to show cause, advised defendant that he would be required to answer as to the threats. It is true that only the mailing of the publications was mentioned in the petition or the order, however the hearing at which the testimony of the threats was given was held on 16 February 1970. Thereafter defendant was on notice of the charge of the threats, but he voluntarily offered no further evidence concerning them. On 22 June 1970 he appeared before Judge Collier and announced that he had no further evidence or argument to present and that he was ready for judgment to be entered. We hold that defendant was on notice from 16 February 1970 until 22 June 1970 that he was charged with contempt for having threatened the plaintiffs and several witnesses, and that this was sufficient notice. *cf. Erwin Mills v. Textile Workers' Union*, 235 N.C. 107, 68 S.E. 2d 813.

The order appealed from does not have numbered paragraphs and is not broken into findings of fact and conclusions of law. Nevertheless from looking at a copy of the original of the order appealed from its appears that there are five unnumbered paragraphs. The order appealed from is modified as follows: By striking from the fourth paragraph of the order the last sentence appearing in said paragraph reading as follows: "The court further finds that said defendant failed to publish the full facts in the cause, but colored said facts so as to bring into contempt and ridicule the court, and especially Judge Walter E. Crissman, who granted the temporary injunction." The order is further modified by striking from the next to the last sentence of the fourth paragraph all of the said next to the last sentence *appearing after* that part reading as follows: "The court further finds that said acts and conduct on the part of the said defendant were made for the purpose and with the intent, and that the same had a tendency, of embarrassing and intimidating witnesses and prospective witnesses in said lawsuit."

[5] Judge Collier found in the fourth paragraph of his order as follows: ". . . that said defendant also made threats to the plaintiffs and to some of the neighbors that, if the suit were prosecuted, he would sell to an undesirable person or would build a brick wall 20 feet high along his property line which abuts the east property line of the plaintiffs." This finding is amply supported by the evidence and in turn supports the entry finding G. Jay Williard guilty as for contempt.

The order appealed from is modified as above set out and as so modified is affirmed.

Modified and affirmed.

Judges MORRIS and VAUGHN concur.