THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY STEVEN CAMPBELL, Defendant-Appellant.

Fifth District   No. 82—255

Opinion filed April 10, 1984.—Rehearing denied May 9, 1984.

Randy E. Blue and Susan A. Diehl, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Gerald A. Sims, Jr., Special Prosecutor, of Pinckneyville (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Terry Steven Campbell, has perfected this appeal from the trial court's finding that he was guilty of criminal contempt of court. Defendant, who was charged with the offense of rape, was tried on two prior occasions in Jefferson County, and both trials resulted in mistrials because the jury was unable to agree upon a verdict. The cause was called for trial for the third time, and the jury was selected on April 6, 1982, and impanelled at 11 a.m. on April 7, 1982. Within the next few hours, defendant filed a civil complaint seeking recovery of: (1) $20,000 compensatory damages and $500,000 punitive damages from the assistant State's Attorney who prosecuted the three trials and (2) $20,000 compensatory and $1,000,000 punitive damages from the complaining witness. The trial court was informed of the filing of the civil suit, and, on motion of the State and over defendant's objection, the court ordered the rape trial jury sequestered at the Mt. Vernon Holiday Inn for the remainder of the trial. The third trial concluded with the jury acquitting defendant of rape. Thereafter, on April 10, 1982, before the jury was discharged, the trial court served upon defendant and his attorney a rule to show cause, charging each with contempt of court. The court also specified: "Bond not to be refunded at this time." Subsequently, the contempt charge against defendant's attorney was dismissed with leave to rein-

state and is not involved in this appeal.

After a hearing on May 7, 1982, at which evidence and arguments of counsel were presented both in support of the contempt charge and by defendant, the court found defendant guilty of contempt as charged. The court thereupon sentenced defendant to 90 days in jail and ordered him to pay a fine of $3,275.29, which apparently represented the costs of jury sequestration plus $200. The fine was ordered to be paid from defendant's bail deposit, with the $575.29 unpaid balance to be paid within six months. Defendant was released from custody on May 10, 1982, after he posted an appeal bond in the sum of $5,000 by depositing $500 cash. Defendant has perfected this appeal, contending that he was not proved guilty of contempt and that, if he was, the sentence was inappropriate.

The record indicates that prior to the first trial, the State moved *in limine* to prohibit defendant from introducing any evidence regarding any prior sexual relations between defendant and the complaining witness without leave of court after an appropriate offer of proof was made *in camera* to the trial court. Prior to the third trial, the State moved *in limine* for an order to prohibit defendant from mentioning or eliciting mention of the two prior trials and their outcomes. Both motions were granted.

Defendant alleged in his civil complaint that he had been tried twice for rape, both trials having ended in hung juries; that the prosecutor had, "with malice and forethought," brought him to trial, knowing there was insufficient evidence to sustain a conviction, in order to embarrass, harass, and harm him; and that the complaining witness had fabricated her account of the acts alleged "to save herself the embarrassment resulting from adultery, unfailthfulness [*sic*], and total lack of moral character had the true incidents of her relationship with [defendant] been admitted to."

The rule to show cause directed to defendant charged defendant with "having filed certain lawsuit [*sic*] on April 7, 1982 being cause No. 82 L 16 to hinder and obstruct this court in the administration of Justice and/or lessen the dignity of the court."

At the contempt hearing which was held on May 7, 1982, Emma Gockel, deputy circuit clerk, testified that defendant and William Kruger, an arcade owner and a part-time employee of defendant's rape trial counsel, delivered for filing defendant's civil complaint against the assistant State's Attorney and the complaining witness in the rape trials. According to Ms. Gockel, there were no members of the press in the clerk's office at that time. She further testified that she had not furnished any copies of defendant's complaint to the press, al-

though members of the press normally knew where to look, which they were free to do because the files were open to the public.

William Kruger testified that he first became aware of the civil complaint just minutes before it was filed when defendant handed it to him on the second floor of the county courthouse and asked the witness how to file it. Mr. Kruger related that defendant paid the filing fees. According to Mr. Kruger, it was he, and not defendant, who gave a copy of the complaint to a reporter for the Mt. Vernon Register-News at about 1 p.m. on April 7, 1982, the day it was filed. The witness stated that he had no knowledge of defendant having contacted the press regarding the civil suit.

During defendant's testimony, when he was asked why he had filed the civil complaint, defendant replied that he had been out of work almost a year and a half and needed the money. Asked why he selected the particular time that he did to file the complaint, defendant stated that he had considered filing sooner but that he did not have the $92 filing fee until after noon on April 7, 1982. Defendant stated that he had lived in Jefferson County all his life and, as far as he knew, the Register-News was the county's only daily paper. Defendant related that he had consulted his attorney regarding the civil complaint just after hiring him and that his attorney had advised him that "it probably wouldn't be the proper thing to do until after the trial." According to defendant, his relatives had advised him not to consult with his attorney about the civil complaint. Defendant stated that he knew that the criminal case was being covered intensively by the press and knew that the press would probably report anything related to the criminal case.

There was also testimony concerning the costs incurred to feed and house the jury at the Holiday Inn while sequestered, including overtime pay for the sheriff's deputies on duty. Included in the record on appeal, as exhibits in evidence at the contempt hearing, are bills from Holiday Inn and two sheriff's deputies and a copy of the April 8, 1982, Mt. Vernon Register-News. The latter exhibit includes two pertinent front-page stories. The more lengthy of the two set forth, *inter alia*, that there had been two previous trials of the criminal charge resulting in hung juries. This story also set forth summaries by both the prosecutor and defense counsel of their respective views as to what the evidence at the third trial would show. The summary attributed to defense counsel referred to prior sexual relations between defendant and the complaining witness.

The second, shorter story concerned defendant's civil complaint. It referred to the two prior trials and the results thereof and quoted

the civil complaint allegations regarding the complaining witness' motivation in prosecuting defendant in order to save herself from the embarrassment of having committed adultery.

On appeal, defendant first contends that the record does not establish that he was proved to be guilty of "criminal contempt by proof beyond a reasonable doubt." This issue raised by defendant on appeal requires a consideration of the fundamental aspects of contempt proceedings; and, in this regard we note that since there is no statutory provision relating to the conduct of contempt proceedings, they are governed by common law.

In *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 59-60, 364 N.E.2d 50, 51, the court, quoting from *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105, stated that contempt of court has been defined as being conduct calculated to: (1) embarrass, hinder or obstruct a court in its administration of justice or to derogate from the court's authority or dignity, or (2) to bring the administration of law into disrepute. The Illinois courts have drawn a distinction between "criminal" contempt and "civil" contempt and have indicated that criminal contempt is to be distinguished from civil contempt solely by reason of the fact that in the former the purpose is to punish the alleged contemnor for his past actions while in civil contempt the court is attempting to coerce compliance with an order of the court. (See *Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 452, 453 N.E.2d 820, 824; *Pabst Brewing Co. v. Brewery Workers Local Union No. 77* (7th Cir. 1977), 555 F.2d 146, 149.) Furthermore, the cases have drawn a distinction between "direct" and "indirect" contempt of court and have indicated that such distinction results in a difference in the proof required to establish the guilt of the alleged contemnor. While direct contempt, having taken place in the presence of the judge or in an integral part of the court, requires no further proof, evidence must be introduced to establish a defendant's guilt of an alleged indirect contempt, which is based on acts alleged to have taken place out of the presence of the judge and not within an integral part of the court. As stated by the court in *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50:

> "Direct criminal contempt may occur in either of two ways. The contemptuous acts may all take place in the presence of the judge so that all of the elements of the offense are within his personal knowledge. Alternately, the direct contempt may be committed out of the immediate physical presence of the judge but within an integral part of the court. [Citation.]" (67 Ill. 2d 55, 60, 364 N.E.2d 50, 51.)

In the case at bar, it is obvious that the trial court was proceeding against defendant on a charge of criminal contempt of court because the court's purpose in the proceeding was to punish defendant for past conduct rather than to coerce compliance with an order of the court.

■ Defendant, citing *People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670, 672, first urges that his alleged conduct could not be considered to be direct contempt of court and that, as a consequence, proof of his guilt must be established beyond a reasonable doubt. If in fact the instant proceedings must be viewed as a charge of indirect criminal contempt, the decision of the court in *People v. Edwards* (1979), 69 Ill. App. 3d 626, 629, 387 N.E.2d 969, 971, dictates that in order to sustain a finding of guilty, the evidence is required to establish a defendant's guilt beyond a reasonable doubt. Regarding the issue of whether defendant's alleged conduct in the instant case constituted a "direct" contempt or an "indirect" contempt, it is noteworthy that the court in *People ex rel. Kunce v. Hogan* stated:

> "The very act of filing a document [with the court] which tends to produce a result within the above-stated *Melody* definition [42 Ill. 2d 451, 452, 248 N.E.2d 104, 105] constitutes a contempt. * * *
>
> * * * [T]he failure of the prosecution to affirmatively prove the state of mind of the defendant is not fatal." (67 Ill. 2d 55, 60, 364 N.E.2d 50, 52.)

Thus, it is apparent that our supreme court would view defendant's conduct in filing the civil complaint in the case at bar as being *per se* an act of direct criminal contempt of court. Nevertheless, we deem it unnecessary for us to determine whether the conduct of defendant in the instant case could be the basis of a direct contempt proceedings. It is our conclusion that defendant's guilt of criminal contempt of court was established beyond a reasonable doubt.

It is noteworthy that the court in the case at bar, as did the court in *People ex rel. Kunce v. Hogan,* conducted the proceedings as a charge of indirect criminal contempt, thus permitting the introduction of evidence both in support of and in defense of the charge. Defendant concedes in his brief that before the matter was set for hearing, defendant was furnished with a copy of the show cause order, was advised that there was probable cause to believe defendant was in contempt of court, and was advised of his rights. Defendant makes no claim that he was denied any of his procedural or substantive due process rights so far as the adjudicatory process of his contempt

charge was concerned, and we find none.

We first note that the general doctrine that a reviewing court will ordinarily sustain a proper ruling of a trial court although the ground assigned for the ruling was erroneous does not apply in the review of direct contempt orders. An order imposing punishment for direct contempt must be sustained upon the ground upon which it is imposed, or not at all. Otherwise, a contempt judgment might be affirmed upon the basis of conduct which the trial court did not find offensive. (*People v. Miller* (1972), 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293.) We conclude that the rationale of *Miller* is applicable to the instant indirect contempt proceedings.

Although the grounds assigned by the trial court in the case at bar for the finding of contempt are not set forth in the written contempt order, the trial court's comments at the conclusion of the contempt hearing were in part as follows:

"*** Mr. Campbell admits that this particular third trial was covered intensively by the Mt. Vernon Register News and other newspapers perhaps and that he had talked to the reporter up here by the name of Mr. Felts who covered the story at least from the beginning he did and somehow a copy of the lawsuit, file-stamped and everything and next day it appeared in the paper. [*Sic.*] The Court feels that the law is that the proven man's intention by the surrounding acts, circumstances and facts, I think this case clearly indicates that the lawsuit was filed for one purpose or multiple purposes basically one overall purpose and that was to obstruct the administration of justice by one filing a lawsuit to influence the jury which he knew of some of them from the very next day in the newspaper. [*Sic.*] Did it to emotionally shake up and disturb the Assistant State's Attorney because who enjoys being sued for half a million dollars? And did it—doing the same thing to the alleged victim and I have one thought of the fact it is bringing the State's Attorneys office of this county in a bad light with the citizens and perhaps [the prosecutor] in particular. *** I do have one particular comment on one thing that any action from malice does not lie prior to a finding of not guilty at the time it was filed. [*Sic.*] In that respect I think considering only it had no validity whatsoever at the time the lawsuit was prepared on April 5th, at least that is what it is dated and signed by the Defendant pro se and filed by him. *** But the most telling thing of all today is the fact when you presented this lawsuit you admitted telling [defense counsel] about it beforehand sometime beofre

[*sic*], but at the time you were preparing and ready to file it you [*sic*] kin folks or relatives told you not to consult your attorney. Why? Because you knew any attorney would have told you not to file it at that time. You knew it was wrong to do it, that's all. \*\*\*."

Thus, it appears from the comments of the trial court that defendant was found guilty of criminal contempt of court for filing the civil complaint for the purpose of obstructing the administration of justice by influencing the jury in the rape case and by intimidating the assistant State's Attorney and complaining witness.

The court in *People ex rel. Kunce v. Hogan* was presented with a case similar to the case at bar; however, it involved a contempt proceedings arising out of the filing of a civil suit by the attorney for a criminal defendant. The court there determined that the trial court did not err in finding that the complaint in the civil case was not filed in good faith but was filed by defendant to hinder, delay, or impede the administration of criminal justice, and to interfere with the judicial process and to embarrass the court so as to lessen the court's dignity and authority. Defendant in the instant case seeks to distinguish the decision in *People ex rel. Kunce v. Hogan* by pointing out that in that case the defendant, who was the attorney for the defendant in a criminal case, filed a civil suit against the presiding judge in the criminal proceedings, two other judges of the circuit court, and the State's Attorney of the county in which the criminal case was pending for sentencing. Defendant urges that the case at bar should be distinguished because here the judge presiding over defendant's rape trial was not made a defendant in the civil suit. Since the prosecuting attorney and complaining witness were made defendants in the civil suit in the instant case, we do not perceive any distinction arising from defendant's decision not to include the presiding judge as a party defendant.

The evidence adduced at the hearing on the rule to show cause establishes that defendant disclosed the civil complaint that he was about to file to a nonlawyer employee of his defense counsel; that he filed the civil suit during his criminal trial; and that the resulting newspaper publication of the allegations of the civil suit and the facts surrounding its filing was calculated by defendant to embarrass, hinder or obstruct the criminal court in its administration of justice and to derogate from its authority and dignity, and to bring the administration of law into disrepute. We agree with the trial court that the acts found to have been committed by defendant were contemptuous. The obvious purpose and effect was to intimidate the complaining wit-

ness and the assistant State's Attorney in the prosecution of the rape charge. Counsel are officers of the court, and threatening opposing counsel in order to intimidate counsel with respect to the handling of a pending case is contempt of court because it tends to deprive the court of the services of one of its officers. (*In re Bowers* (1918), 89 N.J.Eq. 307, 309, 104 A. 196, 197.) Likewise, it may be contempt to threaten or to intimidate a witness. (See *Anderson v. Williard* (1971), 11 N.C.App. 70, 75, 180 S.E.2d 410, 413-14, *cert. denied* (1971), 279 N.C. 348, 182 S.E.2d 580.) That defendant intended to intimidate the complaining witness and the assistant State's Attorney by filing the civil contempt complaint is shown, not only by the naming of those two individuals as civil defendants, but more conclusively by the timing of the filing of the complaint, *i.e.*, as the third trial commenced. As such acts pertain to the complaining witness, that such was their intended effect is further shown by the allegation as to her "adultery, unfailthfulness [*sic*] and total lack of moral character ***." This allegation was without significance with respect to the issues raised by the complaint and could only have been stated to disgrace and intimidate her. See *State ex rel. Porter v. First Judicial District* (1950), 123 Mont. 447, 455-56, 215 P.2d 279, 284.

Likewise, the disclosure of alleged prior sexual relations between defendant and the complaining witness, which had been the subject of the trial court's motion *in limine*, was an act of direct criminal contempt of court, designed to circumvent the court's order. These facts appeared in both of the newspaper articles to which we have previously alluded; one reference was attributed to defendant's civil complaint, the other to defendant's rape trial defense counsel, who was also charged with contempt. The evidence at the contempt hearing established that defendant realized that his civil complaint would be reported by the local newspaper without action on his part beyond the filing of the complaint. The natural effect of such publicity would be to disseminate the allegation as to prior sexual relations within the community and possibly to the unsequestered jury. Thus, on this basis, we conclude that defendant was properly found guilty of criminal contempt for wilful disobedience of the trial court's order concerning references to the complaining witness' prior sexual contact.

Defendant argues that the State has failed to prove: (1) the state of mind of the assistant State's Attorney and the complaining witness as a result of being sued, and (2) that the jury would have learned of the matters in the newspaper which were subject of the motions *in limine*. We conclude that it sufficed to prove defendant's overt acts evidencing a contemptuous intent, without proof that the desired ef-

fect occurred. (See *People ex rel. Kunce v. Hogan; State v. Weinberg* (1956), 229 S.C. 286, 292, 92 S.E.2d 842, 845; *Brewer v. State* (1936), 176 Miss. 803, 809, 170 So. 540, 541; 17 C.J.S. *Contempt* sec. 8b (1963).) It has been said that failure of the design becomes immaterial except with respect to the punishment for contempt. (*Brewer v. State.*) In any event, the effects which defendant contends were not proved could properly have been inferred from the mere filing of the complaint under the existing circumstances thereof. *Cf. People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 60, 364 N.E.2d 50, 52.

We conclude, therefore, that the evidence adduced in the case at bar establishes beyond a reasonable doubt that defendant was guilty of criminal contempt of court; and we now consider the issues raised by defendant regarding the penalty assessed.

▪ Defendant contends that since he neither received a jury trial on the contempt charge nor waived one, the trial court should not have sentenced him to a fine in excess of $500. We agree. (*County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 356, 282 N.E.2d 720, 723; see also *Cheff v. Schnackenberg* (1966), 384 U.S. 373, 380, 16 L. Ed. 2d 629, 634, 86 S. Ct. 1523, 1526.) The State urges that *Kickapoo Creek* was implicitly overruled in *Muniz v. Hoffman* (1975), 422 U.S. 454, 477, 45 L. Ed. 2d 319, 335-36, 95 S. Ct. 2178, 2190-91. We view *Muniz* as not being controlling in the case at bar but as creating an exception to the general rule set forth in *Cheff*. The exception has no application here. The *Muniz* court concluded that a fine in excess of $500 (there, $10,000) for contempt was minor since the contemnor was an organization having about 13,000 members. We conclude that the instant fine must be reduced to $500.

▪ Defendant further contends that the trial court erred in failing to consider defendant's financial means to pay the fine imposed. Defendant has waived this issue by failing to bring it to the attention of the trial court. (See *People v. Wilson* (1980), 87 Ill. App. 3d 544, 549, 408 N.E.2d 1209, 1213, *cert. denied* (1981), 451 U.S. 989, 68 L. Ed. 2d 848, 101 S. Ct. 2327-28; *People v. Pearson* (1982), 108 Ill. App. 3d 241, 244, 439 N.E.2d 31, 33.) However, had the defendant preserved this issue, the record sufficiently discloses defendant's ability to pay the fine assessed. Defendant was able to obtain the $92 in filing fees for the civil complaint on April 7, 1982. He paid $500 cash bond on the contempt charge on May 10, 1982, at which time his total bail deposits equalled $3,500. Had defendant been convicted of rape, his bail deposit on that charge could have been retained under the provisions of section 110—7(i) of the Code of Criminal Procedure of 1963 to pay any fine assessed. Ill. Rev. Stat. 1981, ch. 38, par. 110—7(i).

■ Finally, defendant contends that the trial court erred in failing to afford defendant an opportunity to offer evidence in mitigation of punishment, citing *People ex rel. Kunce v. Hogan.* In that case, after a contempt hearing, the trial court took the issue of guilt under advisement, then issued a written order stating his finding of guilt and the sentence imposed therefor. Thus, in *Kunce,* as in the instant case, the contemnor was not afforded an opportunity to present either evidence or argument in mitigation of punishment. We recognize that here, unlike *Kunce,* defendant at least had opportunity to object as the trial court orally proceeded to sentence him. However, that difference notwithstanding, we view *Kunce* as requiring the trial court to afford the defendant an opportunity to present mitigating evidence or argument prior to imposing a sentence of confinement for contempt, unless the charges are prosecuted as a direct criminal contempt permitting the summary determination of guilt and imposition of sanctions without a hearing. Accordingly, we reverse the jail sentence imposed by the trial court.

For the foregoing reasons, that portion of the judgment of the circuit court sentencing defendant to confinement for a term of 90 days is reversed and the fine imposed in the instant case is reduced to $500.

Affirmed and modified in part; reversed in part.

JONES and HARRISON, JJ., concur.