OPINION OF THE COURT
Bertram Katz, J.
This case presents a number of issues of novel impression regarding the constitutionality of a new act of the Legislature intended to reduce the number of jury trials in the Criminal Court.
The defendant, Maggie Cruz, has moved for an order of this court granting her a trial by jury, a right guaranteed, subject to complex limitations, by the Federal and State Constitutions. (US Const 6th Amend; art III, § 2; NY Const, art I, § 2.)
*236 She is charged with four A level misdemeanors, petit larceny (Penal Law § 155.25), criminal trespass in the second degree (Penal Law § 140.15), criminal mischief in the fourth degree (Penal Law § 145.00) and possession of burglar’s tools (Penal Law § 140.35), all of which are triable before a judge without a jury pursuant to the recently enacted amendment to Penal Law § 70.15 and CPL 340.40 (L 1984, ch 673, eff Nov. 1, 1984). The maximum sentence for each charge is six months’ incarceration and a $1,000 fine. The defendant has urged the court to find the new amendment, hereinafter referred to as the "Reclassification Law”, unconstitutional under both the Federal and State Constitutions.[1]
THE RECLASSIFICIATION LAW
The new law[2] creates two separate classes of A misdemean *237 ors. The first category of 27 specifically designated misdemeanors, for which the maximum authorized penalty remains one year, must be tried before a jury. All other class A misdemeanors in the Penal Law, which include the four charges lodged against this defendant, are subject to a maximum penalty of six months for first offenders. Consequently, there is no right to a trial by jury for the latter group of crimes.
The intent of the new bill is set out in the Governor’s memorandum of approval:
"This bill is an attempt to deal with the severe backlog of misdemeanor cases in the local criminal courts of the State’s large cities, particularly New York City. It has been estimated that less than one half of one percent of misdemeanor cases filed in New York City are brought to trial. The resulting backlog seriously distorts the process of reaching just resolutions in cases that are not brought to trial because, as practical matter, they cannot be.
"This bill addresses this problem by providing that sentences for the Class A misdemeanors which constitute the *238 great bulk of misdemeanor cases in the state are changed so that the maximum penalty is six months in jail. Under this bill, defendants charged with such crimes need not receive a jury trial in New York City, and several of the State’s other largest cities. This change will permit many more trials to take place since they will be before a judge, not a jury. And, although the bill reduces the authorized sentence for many Class A misdemeanors, few defendants without a prior criminal record who are convicted of a Class A misdemeanor currently receive sentences in excess of six months anywhere in the State. Consequently, with respect to those defendants, the provisions of this bill do not represent a practical change.” (1984 McKinney’s Session Laws of NY, at 3632-3633.)
UNCONSTITUTIONALITY
There are four parts to the defendant’s argument in support of the bill’s unconstitutionality:
1. Some of the misdemeanor charges faced by the defendant, notwithstanding the reduced sanctions, are inherently serious malum in se crimes that were indictable at common law, and as such, must be tried by a jury.
2. The possibility of a $1,000 fine takes these charges out of the category of "petty crimes” for which the State may dispense with jury trials.
3. The new law irrationally discriminates between first offenders and recidivists, reducing the sentence for the former to six months, but granting the latter a trial by jury after a determination that the latter is a "second crime offender”. (CPL 400.14.) "Second crime offenders” are subject to a maximum sentence of one year. (Penal Law § 70.15 [1] [d].) It is argued that the right to a trial by jury should be based not upon the character of the offender, but upon the nature of the offense.
4. Finally, the possibility of social stigma and other collateral consequences that result from conviction mandate a trial by jury for these four "serious” misdemeanor charges.
THE PRESUMPTION OF CONSTITUTIONALITY
As with all legislative enactments, an exceedingly strong presumption of constitutionality attaches to the Reclassification Law. (People v Pagnotta, 25 NY2d 333 [1969].) While this presumption can be rebutted, it is incumbent upon the defen *239 dant to demonstrate unconstitutionality beyond a reasonable doubt. (Matter of Van Berkel v Power, 16 NY2d 37 [1965].)
The role of the nisi prius court in this context is a limited one, since such courts may not set aside a statute as unconstitutional except as a last resort. (Bohling v Corsi, 204 Misc 778, affd 306 NY 815; Matter of Spielvogel v Ford, 1 NY2d 558 [1956], appeal dismissed 352 US 957.)
It must also be presumed by the court that the State Legislature has investigated and found the existence of a situation justifying the need for or desirability of the enactment. If any state of facts, known or to be assumed, justifies the law, the court’s power of inquiry ends. (United States v Carolene Prods. Co., 304 US 144 [1938].)
THE RIGHT TO TRIAL BY JURY
The right to a trial by jury is granted to criminal defendants in order to prevent oppressive acts by the government, such as arbitrary law enforcement. (Duncan v Louisiana, 391 US 145 [1968].) The jury interposes between the accused and his accuser the judgment of laymen who are less tutored perhaps than a judge, but who at the same time are less likely to function or appear as but another arm of the government that has proceeded against him. (Baldwin v New York, 399 US 66, 72 [1970].)
However, the Supreme Court has consistently held that the right does not attach to "petty offenses” since, at common law, such offenses were tried summarily without a jury. (District of Columbia v Clawans, 300 US 617, 624 [1937]; Callan v Wilson, 127 US 540, 557 [1888].)
In distinguishing petty offenses from serious offenses, the court has held that the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not, and may in itself, if severe enough, subject the trial to the mandates of the 6th Amendment. (Duncan v Louisiana, supra.) Therefore, while it was held in the case of Cheff v Schnackenberg (384 US 373 [1966]) that a sentence of six months’ incarceration for criminal contempt implicates a petty offense, triable without a jury, it is constitutionally mandated that a trial by jury be afforded to any defendant faced with a charge for which imprisonment in excess of six months is authorized. (Baldwin v New York, 399 US 66, supra.) This "objective criteria”, the penalty authorized for the offense, is the best gauge of the locality’s social and ethical *240 judgment on the seriousness of the offense. (District of Columbia v Clawans, 300 US 617, 628, supra.)
THE GRAVITY OF THE OFFENSE
However, in spite of the Cheff ruling (supra) and its progeny, it has often been held, particularly by the Ninth Circuit Court of Appeals, that offenses carrying a maximum penalty of six months are not automatically petty. (See, e.g., United States v Sanchez-Meza, 547 F2d 461 [9th Cir 1976].) "Although the maximum statutory penalty is the 'most relevant’ objective criterion in the Sixth Amendment equation * * * it is not the sole criterion.” (United States v Stewart, 568 F2d 501, 503 [6th Cir 1978].) According to this analysis, one must also look to the "inherent gravity” of the crime, whether it is malum in se or merely malum prohibitum, and whether it was indictable at common law. (District of Columbia v Colts, 282 US 63 [1930]; United States v Craner, 652 F2d 23 [9th Cir 1981].)
In the case at bar, the defendant alleges that petit larceny and criminal trespass are both "serious” malum in se crimes, indictable at common law, and consequently all charges must be tried before a jury.
However, there are a number of difficulties with applying this Colts-Craner analysis to a New York case of this type. First, the consideration of whether a crime was indictable at common law is a meaningless one, since, as the Craner court conceded, even the pettiest of crimes were indictable at common law. (United States v Craner, supra, at p 26, n 3.) Second, the United States Supreme Court cases such as Colts and Clawans (supra), which provide the ostensible authority for the more recent Ninth Circuit rulings, are of early vintage, and, if not explicitly overruled, have lost much of their precedential force.[3] In deciding Duncan and Baldwin (supra), *241 the Supreme Court used a "bright line” six-month standard, and downgraded the importance of malum in se considerations or common-law indictments.
Third, the Court of Appeals, in Matter of Morgenthau v Erlbaum (59 NY2d 143, cert denied — US —, 104 S Ct 486 [1983]) promulgated a New York rule that the Legislature’s establishment of sentence length must be considered the determinative gauge of the inherent "gravity” of an offense for 6th Amendment purposes. For a judge to make an independent subjective evaluation of the seriousness of the crime would be an "improper usurpation of the legislative function.” (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 155, supra.)
Fourth, the Craner decision (supra), upon which the defendant places much reliance, is readily distinguishable. The charge in Craner was driving while intoxicated in a national park. The penalty authorized by the United States Secretary of the Interior was the same as that for a myriad of other crimes, from "Climbing Mount Rushmore” to "digging for bait in a National Park,” and could hardly be called a "considered legislative judgment of the gravity of the offense.” (United States v Craner, supra, at p 27.) Faced with a similarly haphazard statutory scheme, this court might find the Craner analysis persuasive.
However, the new misdemeanor bill may be many things, but it is not a haphazard undertaking. It is a painstaking and detailed reclassification of crimes into two categories, serious and petty. The Legislature has explicitly weighed the gravity of each offense and has determined which should be expeditiously processed through the lower courts, and which are of sufficient gravity to merit more severe treatment.
For all of these reasons, the court finds that the charges lodged against the defendant are not inherently serious, and on authority of Matter of Morgenthau v Erlbaum (supra), denies this part of the defendant’s motion.
THE PRICE OF PETTINESS
In the court’s view, the most compelling argument raised by the defense is that the charges are serious crimes by virtue of the fact that class A misdemeanors are punishable by a *242 maximum fine of $1,000.[4] The significance of this fine amount derives from the numerous United States Supreme Court cases that have relied, to a large extent, on the Federal definition of "petty crimes” contained in 18 USC § 1 (3). This section defines petty crimes as those crimes "the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both”.
In what appears to be an oversight, the Legislature, in enacting the reclassification bill, focused exclusively on incarceration, and neglected to amend the fine provision to conform with the Federal standard. This oversight, in the view of the defense, entitles the defendant to a jury trial and renders the statute denying him a jury trial unconstitutional.
Curiously, there is ample authority throughout the Nation to support this viewpoint, although none of it is binding on this court. Once again, the leading case is a product of the Ninth Circuit Court of Appeals (United States v Hamdan, 552 F2d 276, 40 ALR Fed 866 [1977]).
Ali Ahmed Hamdan was an alien convicted of violating the Federal immigration laws. The specific section, 8 USC § 1306 (c), carried a maximum penalty of six months’ imprisonment, a $1,000 fine, or both. The Ninth Circuit held that the mere possibility of a $1,000 fine was sufficient justification for a jury trial, due solely to the fact that $1,000 was more than the Federal statute provided for. The adoption of this "bright line” standard (i.e., six months/$500) would serve the "interests of uniformity, objectivity, and practical judicial administration” (United States v Hamdan, supra, at p 280).
The sole United States Supreme Court case that bears in any way on this monetary issue is Muniz v Hoffman (422 US 454 [1975]). In Muniz, a $10,000 fine was levied against a labor union for violation of a District Court’s temporary injunction against picketing. The court held, in a 5 to 4 decision[5] that the *243 labor union had no statutory or constitutional right to a trial by jury, even though the $500 petty crime standard of 18 USC § 1 (3) had been drastically exceeded by the sentencing court. Justice White, writing for the majority, observed that the $500 figure had "no talismanic significance, and we cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual’s liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different. It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union” (Muniz v Hoffman, supra, at p 477; emphasis supplied).
A $10,000 fine, Justice White noted, could easily be borne by a labor union with 13,000 dues-paying members. Left unanswered was the question of whether a fine in excess of $500 levied upon an individual should be treated the same way, i.e., as "petty”.
There is a lack of unanimity on this question in the State and Federal courts, although the latter have more readily followed the Hamdan analysis. For example, even before Hamdan (supra) was handed down, the District of Columbia Circuit, in Douglass v First Natl. Realty Corp. (177 DC App 409, 543 F2d 894 [1976]), held that the imposition of a $5,000 fine on an individual for criminal contempt was invalid, since it had been imposed without a jury trial. The court held that a fine as large as $5,000 would be regarded as serious by most individuals, and that the Muniz decision (supra) was limited to fines against organizations. However, this was admittedly a "grey area” of the law (Douglass v First Natl. Realty Corp., 543 F2d, at p 902) and until the Supreme Court addressed the question, the sound approach was to continue to follow the six-month/$500 benchmark. The $5,000 fine was adjusted downward to $500, in lieu of ordering a new trial.
In Girard v Goins (575 F2d 160 [8th Cir 1978]), the right to a trial by jury was held applicable to 11 union members who *244 were assessed with fines ranging from $2,500 to $10,000 for criminal contempt. Weighing (p 164) the " 'seriousness of the risk and the extent of the possible deprivation’ ”, the court held (p 165) that the imposition of fines in these amounts connoted serious offenses, although it was "unwilling to establish the principle in this Circuit that any fine assessed against an individual in excess of $500 is of such magnitude to constitute a serious offense”. (Emphasis supplied.)
In a case involving trespass upon a nuclear power plant, the Tenth Circuit Court of Appeals in People v McAlister (630 F2d 772 [1980]) ruled that a fine of $750, of a potential maximum of $1,000, entitled the defendant to a trial by jury. Rather than examining the financial condition of each defendant in order to determine "seriousness”, the court stressed the importance of using the only available objective standard and found a jury trial to be appropriate. Although noting that the Federal "benchmark” of $500 was of dubious relevance in these inflationary times, the court nonetheless chose to "err on the side of protecting a constitutional right” (supra, at p 774; see also, United States v Professional Air Traffic Controllers Org., 678 F2d 1 [1st Cir 1982] [$5,000 fine levied against the PATCO local president was impermissible without a jury trial]).
THE STATE CASES
The logical tendency in the Federal circuits, in dividing serious from petty crimes, has been to rely on the Federal statute where individual defendants are concerned.[6]
The State courts are another matter. While some States have fallen into line with the Douglass-Hamdan line of cases (see, Matter of Evans, 411 A2d 984 [DC 1980]; Brown v Multnomah County Dist. Ct., 280 Ore 95, 570 P2d 52 [1977]; People v Campbell, 123 Ill App 3d 103, 462 NE2d 916 [1984]), a significant number, particularly in New Jersey, have not (Mitchell v Superior Ct., 156 Cal App 3d 1033, 203 Cal Rptr 379 [1984]; State ex rel. Baumert v Superior Ct., 127 Ariz 152, 618 P2d 1078 [1980]; State v Zoppi, 196 NJ Super 596, 483 A2d 844 [1984]; State v Tenriero, 183 NJ Super 519, 444 A2d 623 [1981]; State v Linnehan, 197 NJ Super 41, 484 A2d 34 [1984]; see *245 also, Seven Rivs. Farm v Reynolds, 84 NM 789, 508 P2d 1276 [1973]).
Based on legislative intent, the Mitchell court (supra) decided that the California legislative enactment of the Red Light Abatement Law, authorizing a contempt fine of as much as $1,000, was nonetheless an explicit determination that the crime was a petty one. In Zoppi (supra), too, it was held that an authorized fine of $1,000 was "appropriate” for a petty offense, and did not implicate the jury trial right.
The Supreme Court of Arizona, in the Baumert case, held that a $1,000 fine, once thought to be severe or burdensome, should now, with the impact of inflation, be considered a mild sanction. (State ex rel. Baumert v Superior Ct, 618 P2d 1078, 1081, supra.)
Similarly, this court believes that the possibility of a $1,000 fine does not take the specific misdemeanors lodged against this defendant out of the category of petty crimes. As is noted in the compelling dissent in the Hamdan case (552 F2d 276, 282, supra), the $500 figure was established by Congress in 1930. Fifty years later, although there have been other amendments to this section, Congress has never made any allowance for inflation, thus greatly increasing the number of offenses that are triable by jury in the Federal courts.
It can hardly be denied that a fine of $500 in 1930 was a vastly more oppressive burden than a fine of $1,000 is today. This demonstrates how illogical it is to "base a constitutional standard on a foundation which may be undermined by the vagaries of the economy.” (United States v Hamdan, supra, at p 282.)
Furthermore, the Muniz majority emphasized the distinction between deprivation of liberty and monetary penalties. It explicitly held that the $500 figure was without significance, although it is now well established, by Baldwin (supra) and other cases, that the six-month benchmark is of key importance in 6th Amendment analysis. It would be a rare criminal defendant who would agree with the Hamdan court that a jail sentence of any kind, much less a six-month term, was not a more serious matter than a fine of $1,000.
Most importantly, the Reclassification Law, if nothing else, is a considered legislative judgment of the gravity of the offenses. Although the $1,000 fine provision was seemingly overlooked, the Legislature has explicitly decided that certain crimes are petty, and that the sanction should be appropri *246 ately limited to six months. It cannot be validly contended that the fine provision signifies that the Legislature considered these to be serious crimes, when the intent behind the law was directly to the contrary.[7] .
This court will not disregard the clear legislative intent of the new bill, through the peculiar vehicle of an obsolete Federal standard, particularly where the only pertinent Supreme Court decision held that standard to be without significance. Accordingly, I find that the $1,000 fine provision, standing alone, connotes a petty crime triable summarily without a jury.
EQUAL PROTECTION
The defendant further challenges the constitutionality of the Reclassification Law on equal protection grounds, arguing that the distinction made by the new law between first and second offenders is not rational. First-time offenders, such as the defendant, who are charged with the "petty” A misdemeanors under the statute, are subject only to a six-month jail term and are consequently deprived of a jury trial. Recidivists are subject, at the option of the prosecutor, to a jail term of one year. Consequently, the latter have the right to a jury trial for the same "petty” crimes that are subject to judge trials in the case of first offenders. In the defense view, the right to trial by jury cannot be based on the "character of the offender”, but must be based on the seriousness of the crime. (Duncan v Louisiana, 391 US 145, supra; Baldwin v New York, 399 US 66, supra.)
The argument is basically one of semantics. An identical attack was made several years ago on CPL 340.40 (7), which, analogously, denies a jury trial to first-time "mandatory” youthful offenders. The Appellate Term of this, the First Department, in People v Denning (98 Misc 2d 369 [1979]), held that the conjunctive effect of CPL 340.40 (7) and Penal Law former § 60.02 (b), which mandated single judge trials of such youthful offenders charged with class A misdemeanors by the simple device of reducing the maximum incarcerative sentence to six months, was not violative of the equal protection clause or of the 6th Amendment. "Only those persons charged with serious crimes are entitled to a jury trial. In accordance *247 therewith, mandatory youthful offenders are denied a jury trial, as are adults or discretionary youthful offenders charged with crimes whereby conviction brings a maximum possible sentence of six months.” (People v Denning, supra, at p 372; accord, People v Joseph M., 84 Misc 2d 1046; People v Gray, 97 Misc 2d 285.)
In addition, the constitutionality of second felony offender statutes have long been upheld against equal protection attack. (People v Parker, 41 NY2d 21; Dillard v LaVallee, 429 F Supp 35, affd 559 F2d 873 [2d Cir 1977], cert denied 434 US 999; People v Clearwater, 98 AD2d 912 [3d Dept 1983].) The equal protection clause does not mandate absolute equality of treatment but merely prescribes that, absent a fundamental interest or suspect classification, a legislative classification be rationally related to a legitimate State purpose. (People v Drayton, 39 NY2d 580, 584-585 [1976]; Marshall v United States, 414 US 417, 422 [1974].)
The disparate treatment of first offenders and recidivists under the new law is directly and rationally related to the legitimate goal of relieving the overburdened jury parts of the lower criminal courts. The fact that some anomalies might result from the legislative scheme of reclassification is not sufficient to overcome the presumption of legislative rationality that attaches to the new statute. (See, United States ex rel. Mercogliano v County Ct., 414 F Supp 508 [US Dist Ct, EDNY 1976], affd 556 F2d 557.) A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (People v Drayton, 39 NY2d 580, 585, supra.)
The Court of Appeals in Matter of Hogan v Rosenberg (24 NY2d 207, revd on other grounds sub nom. Baldwin v New York, 399 US 66 [1970], supra) upheld the "territorial discrimination” of New York City Criminal Court Act § 40, which denied jury trials within the City of New York for the same misdemeanor charges for which jury trials were provided for outside of the city’s borders. Finding that provision constitutional on equal protection grounds, the court held that "it is our opinion that the overburdening caseload existing in the criminal courts of the highly populated City of New York has given rise to extraordinary and unique circumstances which manifests the reasonable basis for making such a distinction” (Matter of Hogan v Rosenberg, 24 NY2d 207, 217-218, supra).[8]
A legislative act that discriminates logically between over- *248 congested city courts and less-congested rural and suburban courts, and between first-time offenders and recidivists, is a rational response to a problem that has only worsened since the Hogan court described it over 15 years ago. The Legislature has the authority to structure the statute regulating jury trials to meet constitutional standards. (See, Taylor v Hayes, 418 US 488, 496 [1974]; Matter of Gold v Gartenstein, 100 Misc 2d 253, affd 74 AD2d 848, revd on other grounds 54 NY2d 627 [1981].)
The court holds that the Reclassification Law does not deny equal protection to the defendant.
COLLATERAL CONSEQUENCES
Finally, the defendant has cited certain "collateral consequences” that could result from her conviction on the charges, such as potential difficulty securing employment. Due to the stigma of conviction, it is alleged, the defendant is entitled to a trial by jury.
However, this argument was energetically rebuffed in the Morgenthau case (59 NY2d 143, supra), which held that prostitution was triable without a jury notwithstanding the notoriety that society attaches to those convicted of that crime. The authorized sentence, not a subjective consideration of collateral consequences, was the determinative factor in the court’s evaluation of "seriousness”.
In a related context, an extended sentence of probation, which is potentially a very significant infringement of personal freedom, has been held to be insufficient in itself to take an offense out of the category of "petty”. (See, People v Denning, supra; Frank v United States, 395 US 147 [1969]; United States v Jenkins, 734 F2d 1322 [9th Cir 1983], cert denied — US —, 105 S Ct 1198.)
Even the Ninth Circuit Court of Appeals, in United States v Rodriguez-Rodriquez (742 F2d 1194 [1984]), has ruled that the extremely serious collateral consequences faced by an alien convicted of crossing the border illegally did not entitle him to a jury trial.
The court finds the defendant’s argument to be mere speculation on this point. Although the collateral consequences of a *249 misdemeanor conviction may be onerous, the weight of authority is contrary to the defendant’s position that those consequences dictate that a jury trial be held. The motion must be denied in accordance with this authority.
CONCLUSION
The defendant has failed to overcome the presumption of constitutionality that attaches to the new legislative enactment. Although it is an appealing notion to "err” on the side of a constitutional right, such a luxury must be reserved to appellate courts, not to courts of first impression, particularly where there is no controlling authority to support such a course of action.
The court believes that the disadvantages faced by defendants who are subject to a fine of $1,000 and six months’ imprisonment are outweighed by the benefits that result from speedy and inexpensive nonjury adjudications.[9] (Baldwin v New York, 399 US 66, 73, supra.)
The court finds the Reclassification Law (L 1984, ch 673) to be constitutional. The defendant’s motion is denied in all respects.

. The Attorney-General of the State of New York has declined to comply with an order of this court, pursuant to Executive Law § 71, directing that the Attorney-General appear in support of the constitutionality of this act of the Legislature. Although the motion papers of the defense and prosecution were more than adequate for the court’s purposes, the response of the Attorney-General’s office is worthy of mention, since the pertinent provision of the Executive Law reads as follows: "When such order has been made in any manner herein mentioned it shall be the duty of the attorney-general to appear in such action or proceeding in support of the constitutionality of such statute.” (Emphasis supplied.)

. Penal Law § 70.15 (1) reads in pertinent part as follows:
"§ 70.15 Sentences of imprisonment for misdemeanors and violation
"1. Class A misdemeanor, (a) A sentence of imprisonment for a class A misdemeanor shall be a definite sentence. When such a sentence is imposed for an offense defined outside this chapter, and deemed to be a class A misdemeanor pursuant to section 55.10 of this chapter, the term shall be fixed by the court, and shall not exceed one year; provided, however, that when such a sentence is imposed for á class A misdemeanor defined in this chapter, the term shall be fixed by the court and shall not exceed six months, except as provided in paragraphs (b), (c), (d) and (e) of this subdivision.
"(b) When a definite sentence is imposed for the following class A misdemeanors, the term shall be fixed by the court, and shall not exceed one year: conspiracy in the fifth degree as defined in section 105.05; assault in the third degree, as defined in section 120.00; official misconduct as defined in section 195.00; criminal possession of a controlled substance in the seventh degree as defined in section 220.03 where the controlled substance is a narcotic drug as that term is defined in subdivision seven of section 220.00; endangering the welfare of a child as defined in section 260.10; criminal possession of a weapon in the fourth degree as defined in section 265.01 where the weapon possessed is a firearm as that term is defined in subdivision three of section 265.00; the attempt to commit criminal injection of a narcotic drug as defined in sections 110.00 and *237 220.46; or the attempt to commit criminal sale of a firearm in the second degree as defined in sections 110.00 and 265.11; hazing as defined in section 120.16; reckless endangerment in the second degree as defined in section 120.20; self-abortion in the first degree as defined in section 125.55; sexual misconduct as defined in section 130.20; sexual abuse in the second degree as defined in section 130.60; unlawful imprisonment as defined in section 135.05; custodial interference in the second degree as defined in section 135.45; coercion in the second degree as defined in section 135.60; possession of usurious loan records as defined in section 190.45; promoting prison contraband in the second degree as defined in section 205.20; tampering with a witness as defined in section 215.10; tampering with a juror as defined in section 215.25; misconduct by a juror as defined in section 215.30; compounding a crime as defined in section 215.45; obscenity in the second degree as defined in section 235.05; riot in the second degree as defined in section 240.05; inciting to riot as defined in section 240.08; divulging eavesdropping device as defined in section 250.25 or aggravated harassment in the second degree as defined in section 240.30.”
CPL 340.40 (2) reads as follows:
"§ 340.40 Modes of trial * * *
"2. In any local criminal court a defendant who has entered a plea of not guilty to an information which charges a misdemeanor must be accorded a jury trial, conducted, pursuant to article three hundred sixty, except that in the New York city criminal court, the local criminal courts of those cities with a population of one hundred fifty thousand or more the trial of an information which charges a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial. The defendant may at any time before trial waive a jury trial in the manner prescribed in subdivision two of section 320.10, and consent to a single judge trial.”

. The Court of Appeals, in Matter of Morgenthau v Erlbaum (59 NY2d 143, cert denied — US —, 104 S Ct 486 [1983]), seems to have assumed that the Colts-Clawans analysis is a dead letter, quoting the following from Codispoti v Pennsylvania (418 US 506, 512 [1974]): "[O]ur decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.”
It should be noted, however, that in the area of search and seizure, the "gravity of the offense” analysis was resurrected as recently as 1084 in Welsh v Wisconsin (466 US 740 [1984]). In Welsh, the conservative faction of the Supreme Court used the Colts-Clawans analysis to argue that Wisconsin considered driving while intoxicated sufficiently *241 serious to justify an exigent warrantless in-home arrest, in spite of the fact that first offenders were subject only to civil forfeiture.

. Penal Law § 80.05 (1) reads as follows:
"§ 80.05 Fines for misdemeanors and violation
"1. Class A misdemeanor. A sentence to pay a fine for a class A misdemeanor shall be a sentence to pay an amount, fixed by the court, not exceeding one thousand dollars, provided, however, that a sentence imposed for a violation of section 215.80 of this chapter may include a fine in an amount equivalent to double the value of the property unlawfully disposed of in the commission of the crime.”

. Significantly, three of the dissenting justices found that there was a statutory right to a jury trial. The statutory question takes up the bulk of the discussion in Muniz.

. As to fines levied against organizations, see, United States v FMC Corp. (428 F Supp 615 [US Dist Ct, WDNY 1977]), Musidor B. V. v Great Am. Screen (658 F2d 60 [2d Cir 1981], cert denied 455 US 944), and United States v Troxler Hosiery Co. (681 F2d 934 [4th Cir 1982]).

. It need hardly be mentioned that the imposition of a $1,000 fine for a class A misdemeanor is an exceedingly rare event in the Bronx County Criminal Court, even rarer than the imposition of a one-year jail term.

. In reversing the Hogan court’s conclusion that misdemeanants faced *248 with a one-year jail term were not entitled to a trial by jury, the United States Supreme Court did not pass on the equal protection question. (Baldwin v New York, 399 US 66, 71, n 17.)

. A valid criticism to be made of the Reclassification Law is that it will have less than the desired impact on the backlogs in the jury parts since the number of defendants unaffected by the legislation remains large. Presumably, the practice of reducing class A misdemeanors to attempts (see, People v Williams, 120 Misc 2d 68; People v Rodriguez, 124 Misc 2d 393; People v Byrd, 124 Misc 2d 987) to avoid jury trials will continue unabated in Bronx and Kings Counties.